By the Court.
Campbell, J.
In December, 1841, the complainants obtained a decree in chancery, for a deficiency on a sale of mortgaged premises in the city of New York, against the defendants, Jones and Graham, who were the original debtors. The decree was docketed, and subsequently transcripts filed in the counties of New York, Montgomery, and Monroe, but no execution was ever issued. The bill charges that at the time of the contracting of the original debt, and for a long time subsequent, the debtors were the owners of a large amount of real estate in all those counties, and that the same was conveyed away fraudulently, prior to the docketing of their decree, and they insist that such decree was, and is, a lien upon such real estate.
The prayer of the bill is, among other things, that Jones and Graham be decreed to pay the debt of the complainants, or that the conveyances made by them, be set aside. That the discharge of James L. Graham, (he having, subsequent to the ob *199 taining the decree, been discharged under the bankrupt act of 1841,) be set aside, and decreed fraudulent and void as against the complainants, and all other creditors who may come in, and contribute to the expenses of the suit, and that hindrances and impediments being removed, the complainants may issue execution upon their decree, and levy upon, and by that means, or under a decree of this court, be allowed to sell all, or so much, of the real and personal estate of Jones & Graham, as may be necessary to pay their debt, and that a receiver may be appointed of the property of Jones and Graham.
The bill, in its general scope and objects, is analogous to what is known, technically, as a judgment creditor’s bill, but there is wanting an essential ingredient, namely, the issue and return of an execution unsatisfied. All the authorities agree that this is absolutely necessary, in order to reach any equitable interests of the debtors in personal estate. The serious question then arises, whether, in the late court of chancery, a bill could be sustained to set aside alleged fraudulent conveyances, or incumbrances of lands, where the party who has obtained a judgment or a decree, which he claims to be a lien on such lands, seeks to remove the obstructions in a court of equity, before he has endeavored to enforce his remedy, at law, by the issue of an execution. The statutes of this state make judgments and decrees, when docketed, liens upon all the lands of the debtor in the respective counties where such judgments and decrees are docketed ; but these liens are general, not specific. They rest upon all the real property of the debtor. The creditor obtains, by such lien, no title to the lands. True, in the case of the distribution of the estate of an intestate, or of an insolvent’s estate in the hands of trustees, his lien would be recognised, and paid according to its priority. But, under other circumstances, if the creditor wishes to enforce his lien, either to sell the lands of his debtor to others, or to obtain title himself, he must proceed further, and by execution, duly issued and levied, cause such lien to be enforced by a sale. Until he docs that, he neither acquires title nor possession, nor the right to possession—he can neither enter upon the lands, ñor bring ejectment for their recovery. If the creditor issues an execution for the purpose of enforcing his judgment, the sheriff must first levy and collect *200 the amount out of the personal property of the debtor, and failing personal property, he must then proceed to the sale of the real estate. But how is it to be ascertained whether the debtor has or has not personal estate which may be applied to the satisfaction of the judgment? An averment, in a judgment creditor’s bill, that the debtor has no property, is not'Sufficient. That question must be determined by the issue and return of an execution, and by that process alone. Until an execution is issued, therefore, and it has been learned that the judgment debtor has no personal property out of which the judgment can be satisfied, it would seem that the creditor could have no right to enforce his lien against the real estate. In England; by force of ancient statutes, as under the laws of this state, the judgment becomes, from the time of its docket, a lien upon the freehold estate of the debtor. There, however, if the creditor sues out a fi. fa., the sheriff is commanded to make the amount-of the judgment out of the personal estate alone. If he wishes to enforce Ms lien against the freehold estate of his debtor, he may sue out an elegit. By that writ of elegit, authorized by ancient statute, the sheriff is commanded to take the personal property of the debtor, and to appraise the same, and to deliver it, at its appraised value, to the creditor, and also to deliver to the creditor, formerly, one half, but now, by a recent statute, the whole of the judgment debtor’s freehold estate, of which he was seized at the time of the docket of the judgment. (West. 2 (13 Edw. I.), c. 18; 1 and 2 Victoria, c. 110, § 11; Wentworth’s Pleading, vol. 10, p. 355; Jacob Law, Dic. title Elegit.) If the debtor has sufficient personal estate, at its appraised value, to satisfy the judgment, then the sheriff does not proceed to deliver the freehold estate. It will be seen that the elegit, in England, is analogous to our writ of fi. fa. In both cases the operation is the same. If a fi.fa. in this state, or an elegit in England, be issued, and the debtor has no personal property, which here can be levied on and sold, or there, appraised and delivered in satisfaction of the judgment, then the sheriff proceeds against the real estate; and the lien, by his action under the writs, which was before general, becomes specific, and if, then, he finds obstructions to the execution of the writs, he may be delayed until these obstructions shall be removed by a court of equity, but *201 when thus removed, he can then proceed to enforce the specific lien, acquired by the writs, without reference to the question, whether or not the debtor may not, in the meantime, have become possessed off sufficient personal property to satisfy the judgment. Suppose it to be true, that when a bill is filed to remove obstructions, the judgment debtor has no personal estate, and that an averment to that effect is made in the bill, but no execution is issued ; suppose, further, that after a protracted litigation in equity the obstructions are removed, but, in the meantime, in the mutations of fortune, the judgment debtor has become possessed of ample personal property to satisfy the judgment, then, when an execution should be issued, the sheriff would levy and collect the amount out of the personal property, and the whole proceedings to remove the obstructions upon the real estate would be nugatory, and of no practical effect. In England the question has repeatedly been raised, whether a bill can be filed to remove obstructions upon freehold estate before the issuing of an elegit, analogous, as we have seen, to our writ of fi.fa., and it is believed that no case can be found where it has been so held. All the English cases support and lay down the rule, that an elegit must first be issued. In a recent case (Neate v. Duke of Marlborough, 3 Mylne & Craig 401), the doctrine is fully discussed, and all the leading cases examined, and the rule that an elegit must be .issued, shown to be founded on correct principles, and completely sustained by authority. See that case in 3 Myl. & Craig, S. C.; 9th Simons, 60; Milford’s Pleading, 114 Dublin ed.; 2d Story’s Equity Juris., § 1216.
“Suppose,” says the lord chancellor, in Neate v. Duke of Marlborough, “ the creditor never sues out the writ, and never, therefore, exercises his option in this court, to give him the benefit of a lien to which he has never chosen to assert his right; the reasoning would seem very strong, that, as this court is lending its aid to the legal right, the party must have previously armed himself with that which constitutes his legal right; and that which constitutes the legal right is the writ.” There are some dicta in our courts to the contrary, though as we understand the law, the point has not been expressly adjudicated. In Hendricks v. Robinson, 2d John. C. R. 284, a decree was made, setting aside fraudulent conveyances, but in *202 that case it was expressly averred in the hill, that the complainant had issued his execution, but by reason of the fraudulent transfers so made, he could not obtain satisfaction of his judgment. This, we suppose, to have been the correct practice. In Brinckerkoff v. Brown, 4 J. C. R. 671, the complainant filed his bill before he obtained judgment, though it was admitted on the hearing, that a judgment had then been recovered. The point was not adjudicated in that case ; but it is conceded that Chancellor Kent seems' to admit that a bill might be filed without the previous issue of an execution; yet the scope and reasoning of the case would seem to lead to a contrary conclusion. Thus, he says, v the legal remedy, by execution, must first be tried. This court is not to know by anticipation that it will be ineffectual.” “ And,” he adds further, “ it is sufficient, however, to observe, that I find the rule, to have been long and uniformly established, that to procure relief in equity by a bill brought to assist the execution of a judgment at law, the creditor must show that he has proceeded at law to the extent necessary to give him a complete title. The rule referred to is that stated by Lord Redesdale (Mitford’s Pleadings, 115), and is understood in England as fully sustaining the doctrine that an elegit must first be issued (see note to Duke of Marlborough before referred to). We think we have already shown that the docket of a judgment gives the creditor no title to the real estate. In doing that, he has not proceeded as far as he can towards obtaining a title ; and yet this case of Brinckerkoff v. Brown, seems to have been principally relied upon in the subsequent cases in our courts, and hereafter referred to.
In the case of McElwain v. Willis, 9th Wendell, 548, the complainant had obtained two judgments. On the first, an execution had been issued, and returned unsatisfied, and on the‘second judgment, an execution had been issued, and was in the hands of the sheriff, at the time of the filing of the supplemental bill. The object of the bill was to set aside an assignment made by the judgment debtors, and which was alleged to be fraudulent and void; the bill was taken as confessed, against one of the judgment debtors, but was answered by some of the assignees, and demurrers were interposed by others. The demurrer of the defendant Willis, was to the supplemental bill, and for want *203 of equity. The demurrer was allowed ; and so far as the question arose in relation to real estate, it was allowed because there was no averment in the bill, that the judgment debtors had then, or had previously had, any real estate, upon which the judgment was, or might have been, a lien ; and as to any equitable interests or property, not liable to execution, the demurrer was allowed, because the execution had not been returned unsatisfied. It is conceded that in this case, Mr. Senator Tracy makes the remark, that “ a judgment creditor may file a bill in respect to his lien on freehold estates, without proceeding to execution but that was not one of the points arising in the case, and was not passed upon by the court. The reference which he makes, is to 1 Atkinson on Conveyances, 513. And whatever may be the text of that writer, he is certainly not sustained by the decisions in England ; but, as we have before remarked, all these decisions are directly the other way. The text of the most eminent elementary writers is to the contrary. Thus Lord Redesdale, in his treatise (Mitford on Pleading), says, “ Thus in the cases alluded to, of an elegit and fieri facias, he must show that he has sued out the writs, the execution of which is avoided, or the defendants may demur ; but it is not necessary for the plaintiff to procure returns to those writs,” and also (page 114), “ courts of equity will also lend their aid to enforce the judgments of courts of ordinary jurisdiction, and, therefore, a bill may be brought to assist the execution of an elegit or fieri facias, when defeated by a prior title.” And also, in Cooper’s Pleading, 148 : “ But in those cases where the court lends its aid to enforce judgments, it must appear that the plaintiff has done every thing in his own power, before he prays for the aid and assistance of a court of equity. If, therefore, he does not state that he has actually sued out execution, and taken out his fieri facias or elegit, the bill may be demurred to.” In Clarkson v. De Peyster, 3d Paige 320, the chancellor says, that for the purpose of removing obstructions, it is not necessary for the creditor to issue an execution, and he cites also 1 Atkinson on Conveyances, and 1 Paige, and Brinckerhoff v. Brown, 4 John. C. R. above referred to. In the case of Clarkson v. De Peyster, one judgment creditor had issued an execu *204 tion, which was returned unsatisfied; the other held a, decree, and execution had been, issued, and was in the hands, of the sheriff, when the bill was filed. The question did not arise, in that case, and its determination was not necessary. No roaspns are given in any of these cases in our courts, and we think we have shown that the authorities upon which the dicta-, haye. rested, do not support the positions.
We are satisfied that the rule, as settled by many adjudicated cases in England, that the execution must first be issued,, before, a bill can be filed, to set aside incumbrances or obstructions upon real estate, is. correct, and is founded upon principle,, a,n.d we- yield to it. our assent. This objection to the complainants.’ bill of a want of equity, would have been fatal upon demurrer, and is equally fatal when raised upon the hearing.
The objections which we have now considered, apply generally to the bill, so far as it seeks to set aside any conveyances made by the defendants, or to reach any property in the hands of any of the defendants,, except the. defendant James L. Graham. As to bim, it prays that his discharge in bankruptcy may be set aside, and that the debt of the complainants may be. reinstated against him, and satisfied, and paid, out of any property now owned by him. The grounds upon which the. complainants rely, to avoid this discharge, are, that subsequent to the passage of the act, and after it went into operation, he gave preferences to some of his creditors, and that he did so, in. contemplation of availing himself of the-benefit of its provisions, and, also, that he fraudulently and wilfully concealed property. Upon the hearing, we were called upon, to determine whether a bill could be filed, to set aside a bankrupt’s discharge, and upon the authority of the case of Alcott v. Avery, 1 Bor. Ch. R. 347, we decided that such a bill, for the purpose of reaching subsequently acquired property, might be filed. Our examinations and reflections since the hearing, have led us to doubt the correctness of that ruling, and to consider, whether an action at law, should not have been commenced. Still, as under the change of proceedings in this state, the question is not now of practical importance, and as we shall proceed, to determine the matter upon the construction of the several pravisiQns of the bankrupt *205 act, we have concluded to consider the bill as rightly filed, according to our previous ruling, and therefore forbear a discussion of the question.
There is a manifest distinction between acts, which are a fraud upon the bankrupt act, and acts, which are in themselves fraudulent; that is, cases of actual fraud. Now, it seems always to have been held in England, that preferences given by the debtor in contemplation of bankruptcy, were a fraud upon the bankrupt act, and the assignees could sue for, and recover back, the sums paid to preferred creditors. The preferences are void, it is said, because they tend to defeat the equality of the bankrupt law. Rust and others, assignees, &c. v. Cooper, Cowper 629; Devon, &c., assignees, v. Watts, Douglass 86. Buller, Justice, “ The motive, perhaps, was not culpable, but the transaction was contrary to the general policy of the law.” Hossels, &c., assignees, v. Simpson, Douglass 89 (note); Poland and others, assignees, v. Glyn, 2 Dow and Ry. 310; Wilson, assignee, v. Balfour, 2 Camp. 519. There are many other cases to the same effect, running through the English reports. The preferences are declared to be a fraud upon the bankrupt act, and the assignees in bankruptcy, may sue for, and recover back from the preferred creditor, the amounts paid or assigned to him. Such preferences also constitute acts of bankruptcy, but do not, in England, prevent the discharge of the bankrupt. The act of United States of 1841, § 2, makes such preferences void as a fraud upon the act, when made in contemplation of bankruptcy, and authorizes the assignee to sue for, and recover the amount; and it also declares that “ the person making such unlawful preferences and payments, shall receive no discharge under the provisions of this act.” Though the bankrupt, in the language of Bayley, Justice, in Poland v. Glyn, pay “ the money upon motives honorable, certainly to him, as an individual, but which cannot be recognised as a defence at law, yet the payment is unlawful.” It would be no defence, to a suit by the assignee, and no answer to an objection interposed to prevent the bankrupt’s discharge at the time of the proceedings in bankruptcy. It is not a case of actual fraud ; but, it is a fraud upon the act. The preferences may be unlawful. But though they may be unlawful, and though, if the question had been raised in *206 the courts of the United States, when the bankrupt applied for his discharge, his application would have been denied ; still, is the fact, if admitted, that the bankrupt in contemplation of bankruptcy, made unlawful preferences, a ground for, after-wards, before another tribunal, impeaching his discharge ? It was said by Lord Eldon, in ex parte Mawson, 6 Vesey 614, in a case, where by the statute, the charge of gambling would prevent the certificate or even be a good ground for impeaching it: “I do not think you can get rid of a certificate that has been obtained, in every case in which you can stay a certificate.” And under the U. S. act of 1841, there would seem to be very manifest differences made between those transactions of the bankrupt, which would prevent his obtaining a certificate, and those, which would impeach it after it was obtained. We have referred to the § 2 of the act. In the § 4, the causes of objection to the obtaining of a certificate, are enumerated as follows:
“ And if any such bankrupt shall be guilty of any fraud, or WILFUL CONCEALMENT OF HIS PROPERTY, OR RIGHTS OF PROPERTY, or shall have. preferred any of his creditors, contrary to the provisions of this act, or shall wilfully omit or refuse to comply with any orders or directions of such court, or to conform to any other requisites of this act, or shall in the proceedings under this act, admit a false or fictitious debt against his estate, he shall not be entitled to any such discharge or certificate ; nor shall any person, being a merchant, banker, factor, broker, underwriter, or marine insurer, be entitled to any such discharge, or certificate, who shall become bankrupt, and who shall not have kept proper books of account, after the passing of this act; nor any person, who, after the passing of this act, shall apply trust funds to his own use.”
It will be seen that all the causes of objection to the obtaining of the discharge, are enumerated. The same section after-wards prescribes as follows:
“And such discharge and certificate, when duly granted, shall, in all courts of justice, be deemed a- full and complete discharge of all debts, contracts, and other engagements, of such bankrupt, which are proveable under this act, and shall be, and may be pleaded as a full and complete bar to all suits, brought in. any *207 court of judicature whatever, and the same shall be conclusive evidence of itself in favor of such bankrupt, unless the same shall be impeached for some fraud o'r wilful concealment by him, of his property, or rights of property, as aforesaid, contrary to the provisions of this act, on prior reasonable notice, specifying in writing, such fraud or concealment.” It will be observed, that the expressions, “ fraud or wilful concealment of property,” are precisely the same, as those used in the foregoing part of the section, as indicating some of the grounds, which should prevent a bankrupt’s discharge. The other enumerated objections to the allowance of the certificate, such as preferences, not keeping proper books of account, not obeying the orders of the court, &c., seem to be studiously omitted. We could not construe the expressions “fraud or wilful concealment of property,” as meaning “or shall have preferred any of his creditors, contrary to the provisions of this act,” without construing them also to mean, “ or who shall wilfully omit or refuse to comply with any order or direction of such court,” and also, “ who shall not have kept proper books of account.” All the grounds of objection to obtaining the certificate, are distinctly enumerated. The discharge, when obtained, can be impeached only on one of those first mentioned, “ fraud or wilful concealment.” The language of the act, seems to us, to be clear and unambiguous. A preference made by a failing and insolvent debtor, though it may be unlawful, and contrary to the provisions of the bankrupt act, was, never, in this country, or, so far as we know, in any other, considered to be a case of actual fraud. It may be a malum prohibitum, but not a malum in se. The word fraud, as used in the § 2, and generally in the act, so far as it is used in connexion with the preference of creditors, seems to be used in the same sense as the word unlawful. The preferences, by the act, were rendered void and unlawful. They prevented the issue of the certificate, but only actual fraud operated to set it aside. The debtor who had parted with all his property to his creditors, but who had given to one more than to another, could not have obtained a certificate, if those creditors, not preferred, interposed an objection at the time of his application in bankruptcy. Then was the time to interpose such objections. The case of fraud, of wilful concealment of " the bankrupt’s property, to be *208 retained 'for his own 'benefit, is widely different. The very "first step which he took, the petition which he would present, would be stamped with perjury ; a certificate of discharge thus obtained could always be impeached. It must be borne .in mind, however, that in commercial countries, discharges in bankruptcy are always impeached with great caution. After the lapse tif years, petitions to set "aside discharges, are sometimes at once rejected ; and they are seldom granted, -Avithout a reference to ascertain how far the proceeding may affect other Iona, fide creditors, who may have traded with, and trusted the bankrupt, after Ms discharge, and upon the faith of his certificate.
In the case now before us, if it were conceded that preferences in contemplation of bankruptcy, were acts of fraud, and vitiated the discharge, we should still think that this discharge would be good; as we feel fully Avarranted by the proof in saying, that when the preferences were made, the defendant did not contemplate availing himself of the -provisions of the act. We were satisfied fully upon the hearing, that there was no foundation for the charge of concealment of property. Laying aside the question as to preferences, there is not, in our judgment, the slightest ground for impeaching this discharge. Though we have preferred to place our decision upon the grounds which we have noAV considered, we feel it our duty to say, that if a determination of the entire merits of the case had been rendered necessary, we should have directed the same decree to-be entered. The complainants, in our judgment, have failed, on -the merits, in making out their ease.
The bill must therefore be dismissed as to all the defendants.
The question of costs, in this case, is one not free from embarrassment. While Ave think that the bill must be dismissed, as against all the defendants, with costs, we -cannot consent to allow a taxation in the usual manner, and thus give to -the defendants the benefit of their voluminous answers. The pleadings and proofs are for magnitude, it is believed, unequalled by those of any leg'al controversy in this country. The defendants, except the defendant Jones, have all -put in-separate answers; and the extent of these answers may be judged of from the fact, that-five of them, if printed, would make nearly or quite twelve volumes of the ordinary size of our volumes of *209 reports. The answer of the principal defendant, Graham, contains a full record of his various transactions for a period of thirteen years, embracing contracts, deeds, and mortgages, and going oftentimes into great detail; and others of their answers, although only on information and belief, repeat the same story, and set.out the various transactions in the like detail. Though .the bill is a very searching one, and the interrogatories.numerous and minute, still we find many things, in these answers, unnecessary and uncalled for. Especially is this true of some of the answers, where the knowledge of the defendants was almost entirely upon information. . We cannot allow these answers in full. There must be large deductions made, and in order to avoid a reference,, which .could not fail to be protracted and expensive, even if we w.ere able to fix any precise rule which should govern the referee, and being also anxious, to put an end, if possible, to a controversy which has already occupied so much of the time of this court, we have, after examination and reflection, concluded .to fix ourselves the allowances to be made tó the defendants for their answers as follows. The answer of James L. Graham is allowed at twenty-five hundred folio. The answer of James Graham five hundred folio of draft, and five hundred folio of copy—in all one thousand folio. The answer of Paschal W¿ Turney also five, hundred folio of draft, and five hundred folio of copy—in all one thousand folio. The answer of Alexander Kelsey four hundred folio of draft, and four hundred- folio. of copy—in all. eight hundred .folio. And" the answer of Joseph B. Varnum two. hundred folio .of draft, and two hundred folio of copy—in all four hundred folio. Charges of course to be made for the usual copies of the answers, at the above enumerated folios. The other costs to which these "defendants are entitled, are, to be allowed them, and taxed according to the rules -of the late court of chancery. The. remaining defendants are entitled to their full costs.