## NEW YORK COMMON PLEAS.

AUGUSTUS W. HEYE and GOTTFRIED F. HEYE, appellants agt. JESSE N. BOLLES, impleaded with CHARLES K. HOWLETT, survivor of JOHN E. COOK, deceased, respondents.

A judgment debtor may invoke the aid of a court of equity to remove some fraudulent or inequitable obstruction interposed by the defendant to the collection of the judgment, independently of which the remedy would have been ample at law.

In such cases, the property out of which the judgment creditor is seeking to satisfy his debt must be subject to the judgment, if real, and to the execution, if personal property.

The jurisdiction of the court rests upon the right or title of the plaintiff to the property in question, acquired by the proceeding at law upon the judgment or execution, and consequently the *return* of the execution by the sheriff is not only not essential, but would be fatal to the relief.

The above principles apply to an equitable action to set aside a fraudlent assign-

ment made by the defendant, as an obstruction to the plaintiff's collecting his judgment by a levy and sale of the debtor's property, under the execution, especially where the plaintiff acquired a lien upon the property by the issuing and levy of an *attachment*.

Where an essential allegation of fact in the complaint is denied in the answer, "for the want of knowledge sufficient to form a belief," instead of "any knowledge or information sufficient to form a belief," as prescribed by the Code, the denial is insufficient, and consequently the fact alleged in the complaint is admitted.

An assignment for the benefit of creditors, made by a member of a co-partnership firm, is fraudulent as to judgment creditors of the firm, where it directs the assignee to pay out of the proceeds of the property assigned, debts owing by the assignor individually, instead of applying such proceeds to the payment of the debts of the assignor due the judgment creditors.

*General Term, June,* 1867.

*Before* DALY, *F. J.,* BRADY *and* CARDOZO, *Judges.*

THE plaintiffs were judgment creditors of John E. Cook and Charles K. Howlett, composing the firm of Howlett & Cook, who, in October, 1860, were doing business in the city of New York, and were then and had been for a long time, both as a firm and individually, alleged to be insolvent.

John E. Cook was also a member of the firm of Cook & Twining, composed of himself and Thomas A. Twining, also doing business in New York. The firm of Cook & Twining was then and had been during their whole co-partnership alleged to be insolvent.

On the 22d day of October, 1860, Howlett executed an agreement to his partner Cook, whereby he agreed to sell him his interest in the concern of Howlett & Cook for $230 in cash and his release from two notes of $2,500 each to Onderdonk; the sale *to take effect* on the payment of the $230 and the destruction of said notes.

This money and these notes have not been paid.

On the 16th November, 1860, the said Cook also proposed, for the consideration of one dollar, to buy all the interest of Twining in and to the property of the firm of Cook & Twining.

And on the same day, November 16, 1860, the said Cook, having thus fraudulently, as alleged, obtained possession of the property of both parties, and having also individual property, made the assignment in question to Bolles, the

defendant, of all the partnership property of Howlett & Cook, of all the partnership property of Cook & Twining, and of his individual property.

The alleged debt of $5,663.42 to Cook's mother was alleged to be a fictitious debt; friendly suits were commenced thereon by Cook's mother against him, judgment obtained, execution issued and supplementary proceedings instituted, to reach the assigned property and give her an unlawful and fraudulent preference; and it was alleged that the defendant, the assignee, with a full knowledge of all these facts, paid the mother out of the assigned property the whole amount of her pretended claim, $5,663.42.

Howlett and Cook, as alleged, were wholly irresponsible and insolvent, and had no property except the assigned property out of which the plaintiffs' debt could be satisfied.

It is alleged that Cook, the assignor, remained in possession of the assigned property from the time of the assignment, in November, 1860, until May, 1861, selling and disposing of the same and applying the proceeds to the rent of his store, his individual use and other expenses. The plaintiffs commenced the action against Howlett & Cook set out in the complaint, issued an attachment therein to the sheriff of New York, levied the same on the partnership property of Howlett & Cook and the individual property of John E. Cook, proceeded to judgment therein, issued execution thereon to said sheriff, and thereby acquired a specific legal lien upon both such partnership and individual property; but they are, as alleged, prevented from enforcing the same and collecting their judgment by reason of the aforesaid fraudulent assignment and obstructions interposed thereto, independently of which the plaintiffs' remedy would have been ample at law.

LEVINUS I. LANSING, *attorney and counsel for plaintiffs, appellants.*

I. All the material allegations of the complaint are admitted by the defendant. So held by Judge Hilton.

Some of the allegations are admitted directly and the others are not controverted, as prescribed by section 149, and therefore, for the purposes of this action, are admitted (§ 168).

An answer is insufficient if it denies merely on information, or merely on knowledge; here, the defendant denies merely for want of knowledge. (*Hacket* agt. *Richards*, 3 *E. D. Smith*, 13; *Edwards* agt. *Lent*, 8 *How. Pr. R.* 28; *Blake* agt. *Eldred*, 8 *Id.* 240; *Elton* agt. *Markham*, 20 *Barb.* 349.)

Whether the defendant *illegally* allowed Cook, the assignor, to sell the assigned goods, or whether he *wrongfully* paid Mrs. Cook or the St. Nicholas Bank, or whether he had the sum of $4,000 and upwards, or any assets in his hands, *which was attachable* in said action, are argumentative and mere denials of conclusions of law, and nullities. (*Ensign* agt. *Sherman*, 13 *How. Pr. R.* 37; *Lawrence* agt. *Williams*, 1 *Duer R.* 585.)

II. The plaintiffs, by their proceedings in their action at law, set forth in the complaint, acquired a specific legal lien upon both the partnership property of Howlett & Cook and the individual property of Cook. The attachment under the Code is an execution by which the debtor's property may be attached at the commencement of the suit, and kept as security for the plaintiff's demand. (*Code*, § 227, &c.; *Rinchney* agt. *Stryker*, 26 *How. Pr. R.* 75; *Court of Appeals, Greenleaf* agt. *Mumford et al.* 30 *How. Pr.* 30; *Furman et al.* agt. *Walters*, 13 *How. Pr. R.* 328; *McKay* agt. *Harrower*, 27 *Barb.* 463; *Thayer* agt. *Willett*, 9 *Abb.* 325; *Falconer* agt. *Freeman*, 4 *Sandf. Ch. R.* 565; *Skinner* agt. *Stuart*, 13 *Abb.* 442; *Pratt* agt. *Wheeler*, 6 *Gray's Mass. R.* 520; *Wilson* agt. *Forsyth*, 24 *Barb.* 105.)

III. The plaintiffs' remedy was complete and ample at law; they could have collected their debt out of either the partnership property of Howlett & Cook or the separate property of Cook, but are prevented by the fraudulent assignment in question, and have no other remedy save to invoke the aid of the court to remove the fraudulent obstructions in the

way, so that when removed they can pursue their legal remedy with effect, and enforce their liens.

This action is rightfully brought for that purpose, and the judge and defendants' attorney err in treating this action as an an ordinary creditor's bill, for the discovery of property after the return of an execution. (*McElwain* agt. *Willis*, 9 *W. R.* 561, 567, *Court of Errors; Pratt* agt. *Wheeler*, 6 *Gray's Mass. R.* 520; *Rinchey* agt. *Stryker*, 26 *How. Pr. R.* 75, *Ct. of Appeals; Beck* agt. *Burdett*, 1 *P. C. R.* 307; *Falconer* agt. *Freeman*, 4 *Sandf. Ch. R.* 565.)

IV. The case fully establishes the fact beyond dispute that the firms of Howlett & Cook, of Cook & Twining, and the several members of such firms, were all insolvent at the time of making the alleged transfers to Cook and the assignment to Bolles, and had been insolvent for a long time prior thereto.

1. The insolvency of the firms and of the several members is distinctly averred in the complaint.

2. It is not denied by the answer.

3. It was held by the judge on the trial that the allegations of the complainant were admitted.

4. It is admitted by the assignment.

5. It is established by the assignment and history of the case, which shows a very large indebtedness existing at the time of the alleged transfers and of the assignment, and still existing.

6. By an inability to pay.

7. A failure to meet their payments as they became due, in the usual course of business, was insolvency. (*Brower* agt. *Harbeck*, 5 *Seld. R.* 594; *Curtis* agt. *Leavitt*, 15 *N. Y. R.* 141; *Herrick* agt. *Borst*, 4 *Hill R.* 650.)

8. Cook, the very day he obtains possession of the property of both firms, makes the fraudulent assignment to Bolles, the defendant, and gives inability to pay the reason for making it.

The findings of the judge that these firms were solvent was, therefore, clearly against the weight of evidence, as well as against his own ruling on the trial; and it was also error for the judge to find facts of which there was no proof in the

case, and of which no evidence was given, viz., the time when Howlett & Cook formed their co-partnership, or the time when Cook & Twining formed their co-partnership.

V. The conditional agreement of Howlett to transfer his interest in the concern of Howlett & Cook to his insolvent partner, Cook; and also of Twining to transfer his interest in the firm of Cook and Twining to his partner, the same insolvent Cook, are fraudulent and void.

1. By the agreement between Howlett & Cook a trust was created for the benefit of Howlett; this was a fraud upon the creditors of Howlett & Cook.

2. By these alleged transfers, the joint property of Howlett & Cook (as well as that of Cook and Twining) is placed in the hands of Cook, whose insolvency is conceded, who was thus enabled to withdraw, and did withdraw, the same from their partnership creditors, and make an illegal and fraudulent disposition of the same.

The partnership creditors had a lien upon the partnership property of the respective firms for the payment of their debts, which could not be defeated by the sale of one partner to another, and thus withdraw the partnership property from the partnership creditors for any purpose whatever.

A contract between partners, which enables one of them to withdraw funds out of the reach of the joint creditors, is fraudulent. (*Burtis* agt. *Tisdale*, 4 *Barb. S. C. R.* 571; *Anderson* agt. *Mattby*, 2 *Ves. Jr.* 255.)

In *Burtis* agt. *Tisdale* the court say: "Insolvent partners should be considered as holding their joint property for the benefit of their joint creditors; and a misappropriation should be deemed in fraud of the implied trust."

In equity, the partnership creditors have a right to follow the partnership property, as a trust, into the possession of all persons who have not a superior title. (2 *Story Eq. Jur.* 689, § 1253; *Wilson* agt. *Robertson et al.* 21 *N. Y. R.* 587.)

Neither Cook or his assignee can have a title superior to the creditors of Howlett & Cook.

3. The agreement of sale by Howlett to Cook of his inter-

est in the firm of Howlett & Cook was not consummated. Neither the money or Howlett's two notes to Onderdonk were paid, nor the security agreed for given; John E. Cook, Jr., the father of our Cook, was also an insolvent, and was no security.

Howlett's title, therefore, never vested in Cook, and Cook had no power, authority or right, to make a general assignment of the partnership property of Howlett & Cook.

The assignment is for this reason fraudulent and void. It was error for the judge to find that the agreement by Howlett to sell to Cook was for a valuable consideration, and that Howlett afterwards transferred his interest to Cook in good faith. And so to find that the transfer by Twining to his insolvent partner, Cook, for a nominal consideration, was for a valuable consideration and in good faith.

VI. The assignment, for matters appearing upon its face, and as matter of law, is fraudulent and void.

1. The assignor has, by the provisions of the assignment, created a trust for his own benefit; he directs, by the 2d, 3d and 4th clauses thereof, the partnership property of Howlett & Cook to be first applied to the payment of his separate debts.

2. He directs in the next place, by the 5th to the 9th clauses thereof, the partnership property of Howlett & Cook to be applied to the payment of the partnership debts of Cook & Twining, to the exclusion of the partnership debts of Howlett & Cook.

3. After providing by the 10th clause for the payment of two notes of Howlett & Cook, he again, by the 11th and 12th clauses, provides for the payment of his individual debts in preference to the debts of Howlett & Cook; and

4. He provides for the pro rata payment of the debts of Howlett and Cook and his separate debts from the joint fund created by the three properties.

5. By the 5th to the 10th clauses, Cook applies his separate property to the payment of partnership debts in preference to his individual debts.

These provisions *per se* defraud the creditors of Howlett

& Cook, and are conclusive evidence of a fraudulent intent, and avoid the assignment.

A general assignment by an insolvent firm of their joint property, giving a preference to the creditors of the individual partners; or such an assignment by a partner of his individual property, giving a preference to the creditors of the firm; or such an assignment making any provision or trust for the benefit of the assignor, is fraudulent and void. (*Jackson* agt. *Cornell*, 1 *Sandf. Ch. R.* 348; *Willard's Eq. Jur.* 719; *Paine* agt. *Matthews*, 6 *P. C. R.* 19; *Wilson et al.* agt. *Robertson*, 21 *N. Y. R.* 587; *Collomb* agt. *Caldwell*, 16 *N. Y. R.* 487; *Wilder* agt. *Keeler*, 3 *P. C. R.* 171; *Burtis* agt. *Tisdall*, 4 *Barb. S. C. R.* 571; *Barney* agt. *Griffin*, 2 *Con. R.* 365; *Hollister* agt. *Liatth*, 4 *N. Y. R.* 210.)

VII. The assignment is also fraudulent and void for the following reasons:

1. The alleged debt of $5,663.42 to Mary J. H. Cook, the assignor's mother, provided for and directed to be paid by the 12th clause of the assignment, was a fictitious debt; the provisions for the payment of the same was a fraud upon all the creditors. The complaint avers that this pretended debt was in fact fictitious; that if any moneys were ever advanced by Mrs. Cook to her son they were a gift; that the suit, the supplementary and other proceedings mentioned, were of a very friendly nature, and were taken by collusion with the said John E. Cook, and to enable the mother more effectually to reach the assigned property and give her an unlawful and fraudulent preference over and to hinder and defraud the plaintiffs and other creditors; and that the defendant herein, with full knowledge of all these facts, paid her the full amount of this fictitious debt. All these allegations are admitted, unless the allegation " that the money claimed to be due to Mary J. H. Cook was a gift to John E. Cook, or that she commenced a suit by collusion with him," are held to be sufficiently denied.

If one trust or preffered claim is fraudulent, the assignment is wholly void. (*Fielding* agt. *Day*, 2 *Sandf. R.* 594; *Hyslop* agt. *Clarke*, 14 *J. R.* 458; *Wakeman* agt. *Grovel*, 4 *P.*

*C. R.* 23, 11 *W.* 187; *Goodrich* agt. *Downs,* 6 *H. R.* 438; *Webb* agt. *Daggett,* 2 *Barb. S. C. R.* 9.)

2. On the 22d of October, 1860, Cook, the assignor, obtains possession of the joint property of Howlett & Cook; on the 16th of November, the joint property of Cook & Twining, and on the same day makes the assignment; remains in possession of the assigned property from that time until May, 1861, selling and disposing of the same and applying the proceeds to his own use, the rent of the store and other expenses. The answer, that the assignee allowed Cook to use the store *for his own benefit,* or that he *illegally* allowed him to dispose of the assigned goods, is evasive and argumentative, and at most a mere conclusion of law. It is, in fact, an admission of the allegations of the complainant. (*Ensign* agt. *Sherman,* 13 *How.* 37; *Lawrence* agt. *Williams,* 1 *Duer,* 585.)

This continued possession by the assignor, from being in the first place presumptive evidence of fraud, has become conclusive, by the want of evidence of good faith, and that there was no intent to defraud. (*Terry* agt. *Butler,* 43 *Barb.* 395.)

VIII. The separate property of Cook was liable to be attached and held for the debt of the plaintiffs.

Partnership debts are several as well as joint at law. " The joint creditors may pursue both the joint and separate estate, to the extent of each, for the satisfaction of their joint demands, which are at law considered both joint and several, without the possibility of the interposition of any restraining power of a court of equity." (*Gow on Partnership,* 317, 319, 320, *note; Story's Eq. Jur.* § 976, *note; Hammersly* agt. *Lambert,* 2 *J. C. R.* 509.

" Each member of a firm is liable to pay the whole debt of the firm; his separate property is liable to be attached and held to secure a debt of the firm, and such attachment cannot be defeated by a subsequent seizure of the same property for his separate debt." (*Allen* agt. *Wells,* 22 *Pick. R.* 450.)

In this case the plaintiffs have exercised this right to

attach, and have actually attached the separate property of Cook, charged the same in execution, and obtained a specific lien thereon. The assignment of Cook to the defendant, by which he has made a fraudulent disposition of his separate property, prevents the plaintiffs enforcing their lien and collecting their debt from such property. This is a direct injury to the plaintiffs, and gives them a right to object to the fraudulent disposition made by Cook of his separate property, and to demand that the instruments which effectuate the fraud be set aside, to enable them to pursue their legal rights and remedies against his separate property.

IX. The judge erred in holding the assignment a good and valid assignment, and that the plaintiffs were not entitled to relief, and dismissing the complaint.

The plaintiffs therefore submit that the judgment in this case, dismissing the complaint with costs, should be reversed, and the assignment should be adjuged fraudulent and void, and that the defendant be directed to pay over to the sheriff of the city and county of New York the amount of the debt and costs, to be applied to the payment thereof.

B. C. Thayer, *attorney and counsel for defendants, respondents.*

*By the court,* Daly, F. J. This is not an action brought by a creditor to enforce the collection of a judgment after he has exhausted his remedy at law, and in which the return of an execution unsatisfied is indispensable before he can ask the equitable aid of the court; but it is an action by creditors who, in a suit brought by them to recover the debt, obtained an attachment against the debtor for fraudulently assigning his property, and who, having recovered judgment in that action, and issued execution upon it, bring the present action to set aside the fraudulent assignment, which is an obstruction to their collecting the judgment by a levy and sale of the debtor's property under the execution. By the issuing of the attachment, the plaintiffs acquired a lien

upon the property of the debtor. (*Falconer* agt. *Freeman*, 4 *Sandf. Ch. R.* 565; *Rinchey* agt. *Stryker*, 26 *N. Y. R.* 75.) And this lien, after the plaintiffs have recovered a judgment, entitles them to the equitable intervention of the court to set aside a fraudulent transfer of the property upon which the lien has attached, or any fraudulent obstacle in the way of enforcing the lien (*Greenleaf* agt. *Mumford*, 30 : *How.* 30); it being the design of the Code that the attachment should be a security for the satisfaction of the judgment, if the plaintiff recovers one. (§ 227.) To maintain such an action, it is not necessary that the execution should be returned; for, as was said by Chief Justice NELSON, in *McElwain* agt. *Willis* (5 *Wend.* 561), it is not only not essential, but it would be fatal to the relief sought; and, as was said by Senator TRACY, in the same case, the execution may be the very instrument by which, when the court has removed the impediment to its operation, the judgment creditor will obtain the perfect satisfaction of his rights. Where a judgment creditor brings an action to set aside a fraudulent conveyance of real estate, which is an impediment to his obtaining a satisfaction of his judgment, an execution must have been issued (*North American Fire Insurance Co.* agt. *Graham*, 5 *Sandf.* 201; *McCullough* agt. *Colby*, 5 *Bosw.* 477); because the sheriff is not to proceed against the real estate if sufficient goods and chattels can be found to satisfy the execution, a fact which cannot be known until an execution is placed in the hands of the sheriff. In this case, however, an execution was not only issued, but the assignment covered all of the personal property of the debtors, and the equitable aid of the court is sought to remove the impediment created by the conveyance, that the personal property may be sold to satisfy the execution.

The next question is, whether the finding of the judge, that the assignment was not made under a fraudulent intent, can be sustained. The denial in the answer, for the want of "*knowledge* sufficient to form a belief" of the allegation in the complaint, that the firms of Howlett & Cook and of Twining & Cook were insolvent when the joint property

belonged to each of these firms was sold to Cook, is not in the form prescribed by the Code. The denial must be of any knowledge or information sufficient to form a belief (*Edwards* agt. *Lent*, 8 *How.* 28; *Blake* agt. *Eldred*, 18 *Id.* 241; *Elton* agt. *Markham*, 20 *Barb.* 349; *Heckett* agt. *Richards*, 3 *E. D. Smith*, 13); and this fact not being properly denied, it is admitted. Treating this material fact, then, as admitted, it appears that Cook became the purchaser of the whole of the property of each of these firms, he at the time of the purchase being a partner in each firm. In his hands, the property then acquired should have been applied to the payment of the partnership debts; instead of which, he afterward made a general assignment for the benefit of creditors, in which he directed his assignee, the defendant Bolles, first to pay out of the proceeds of the property assigned certain debts owing by him individually, which was a diversion of the property to the payment of his individual debts, in fraud of the rights of the creditors of the firms of Howlett & Cook and Twining & Cook. Such an assignment is fraudulent. (*Burtus* agt. *Tisdale*, 4 *Barb. S. C.* 571; *Wilson* agt. *Robertson*, 21 *N. Y. R.* 587; *Wakeman* agt. *Trevor*, 11 *Wend.* 187; 4 *Kent's Com.* 64; *Anderson* agt. *Mattby*, 2 *Ves. Jr.* 255.) The plaintiffs were creditors of the firm of Howlett & Cook, and the validity of their debt being settled by a judgment, they were entitled to have this fraudulent assignment set aside, that they might have their judgment satisfied out of the property covered by the assignment; for when this impediment is removed, this property, whether rergaded as partnership property, which the partnership creditor may reach, as primarily liable, in the hands of Cook, to the payment of partnership debts (*Story's Eq. Jur.* § 1253), or as the individual property of Cook under the transfers made to him, it is equally liable to be levied and sold to satisfy their judgment.

The plaintiffs having shown that they were entitled to the equitable relief which they sought, the decision of the judge at the special term was erroneous, and the judgment must be reversed.