(16 App. Div. 381.)

### STOKES v. HOUGHTON.

(Supreme Court, Appellate Division, First Department. April 23, 1897.)

1. QUIETING TITLE—WHAT CONSTITUTES CLOUD—MORTGAGES.
   A mortgage may be canceled as a cloud on title where it is valid on its face, though it has ceased to be a lien, and has never been recorded.
2. SAME—ENFORCEABILITY—RESORT TO EXTRINSIC EVIDENCE.
   The right to have a mortgage canceled as a cloud on title will not be denied because the mortgage is not enforceable without resort to extrinsic evidence, where such evidence is required to supply a mere insufficiency, which does not go to the validity of the mortgage.
3. SAME—THREAT TO CREATE CLOUD.
   There is a threat to create a cloud on title where an instrument exists which the holder may so utilize as to convert into a cloud, and he refuses to surrender it.

Appeal from special term, New York county.

Action by William E. D. Stokes against Frank R. Houghton. From an order sustaining a demurrer to the complaint, and from judgment entered thereon the same day dismissing the complaint, plaintiff appeals. Reversed.

The action was brought to obtain the surrender of a certain mortgage executed by the plaintiff upon real estate in the city of New York. The complaint alleges that the defendant became a surety upon the bond of certain receivers in an action brought by the plaintiff in the United States circuit court for the Southern district of New York; that, as a condition of executing the same, the defendant required indemnity from the plaintiff; that the latter thereupon gave him the mortgage in question for that purpose, which recited the receivership proceedings and the plaintiff's agreement; that said action has been discontinued, and an order duly entered with the clerk of the court, canceling the bond and discharging the sureties; that said order directed the clerk to mark the bond canceled, which he did; that thereby all liability on the part of the defendant was terminated; and that a return of the mortgage has been demanded and refused. The complaint was demurred to upon the ground that the court has not jurisdiction of the subject of the action, and that the complaint does not state facts sufficient to constitute a cause of action.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, O'BRIEN, and INGRAHAM, JJ.

William R. Martin, for appellant.
Julius H. Seymour, for respondent.

BARRETT, J. It seems to be settled by the cases that an action in equity will lie to cancel as a cloud on title a mortgage which was not in its inception, or which has since ceased to be, a valid lien upon the property covered by it. Such an action was entertained in Levy v. Merrill, 14 Hun, 145, where the mortgage had been paid. It appeared there that the plaintiffs had conveyed the property, and that the purchaser had reserved enough of the purchase money to answer

the mortgagee's claim; but the decision does not seem to have been based upon these special facts. Miner v. Beekman, 50 N. Y. 337, also, seems to be a direct authority. The action there was brought by grantees of the mortgagor against grantees of the mortgagee in possession, to determine the amount due upon the mortgage, and to be let into possession upon payment thereof. It was held that the action would lie, Grover, J., saying: "It is a right inherent in the owner of the fee to have clouds removed, and apparent, but not real, incumbrances discharged of record at all times." The fact that the principal point there raised by the defendants and discussed by the court was whether the statute of limitations had run against the right of action in no way weakens the case as an adjudication that such an action will lie. In Schoener v. Lissauer, 107 N. Y. 111, 116, 13 N. E. 741, it was held that an action would lie to cancel a mortgage procured by duress. Rapallo, J., said that the owner of land "has a right to invoke this aid, and to have an apparent, though not a real, incumbrance discharged at any time while he continues to be the owner." In Swarthout v. Ranier, 143 N. Y. 499, 38 N. E. 726, Rapps v. Gottlieb, 67 Hun, 115, 22 N. Y. Supp. 52, and Smith v. Fellows, 41 N. Y. Super. Ct. 36, similar actions were entertained, and other cases to the same effect might be cited. So much direct authority might fairly be taken as settling the question presented to us. The learned counsel for the defendant, however, has so ably assailed the jurisdiction of equity over this action that it seems pertinent to consider more at length the objections raised.

The principal argument advanced is that the mortgage recites the receivership proceedings, and that a reference to those proceedings shows that the object for which it was given has ceased to exist. It is claimed that this brings the case within a well-defined line of authorities which hold that an equity action will not lie, under the facts presented, to cancel an instrument as a cloud upon title. Scott v. Onderdonk, 14 N. Y. 9; Ward v. Dewey, 16 N. Y. 519; Hatch v. City of Buffalo, 38 N. Y. 277; Overing v. Foote, 43 N. Y. 291. The rule laid down in these cases is thus stated in Scott v. Onderdonk, the leading authority:

"If the claim is based upon a written instrument void upon its face, or if it requires the existence of a series of facts, or the performance of a succession of legal acts, and there is a defect as to one or more of the links, there is no reason for entertaining the litigation, and the party must wait until the legal title is asserted."

There is, however, a clear distinction between such cases and the present. The former dealt for the most part with leases or other instruments in the chain of a tax title. They were either void upon their face or defective for the lack of additional proceedings necessary to give them validity. Here we have nothing of the sort, but a mortgage complete in itself and binding on its face. It was entirely valid when executed and delivered, and ceased to be so only upon the happening of subsequent facts which terminated the object for which it was given. It is not a partial and ineffective step towards procuring an interest in the land, but a complete and threatening entity.

The contention of the defendant includes another step. It is, as

we understand it, that the mortgagee, in order to enforce the mortgage, would have to prove, not only its execution, but also the facts bringing it into play. This the defendant would be unable to do, and it is claimed that here is a complete answer to the action. Upon careful consideration, we are unable to agree with this contention. It is apparent, at once, that, if sound, it would prevent an action to cancel a mortgage in any case where the fact constituting the defense to it is one which it would be necessary for the mortgagee, in the first instance, to disprove in his foreclosure suit. It would, for example, be a bar to actions like Levy v. Merrill and Miner v. Beekman, supra, where the defense was payment, and Rapps v. Gottlieb, supra, where the defense was absence of delivery. It is not to be presumed that these cases were decided on an erroneous theory, and the nature and application of the rule as to clouds shows that it does not recognize such a contention as the above. The question in every case has been, and is, whether a cloud exists. Hunt, C., in Fonda v. Sage, 48 N. Y. 173, 184. If so, it will be removed, and jurisdiction is refused only where one does not exist, and is not even threatened. But no case which we have noticed makes the question whether a cloud exists depend upon whether the claimant would be obliged to furnish proof outside thereof in order to enforce it. The rule which the cases lay down is quite otherwise. They hold that the instrument is not a cloud only when it is upon its face void or defective, and so fails to create even a prima facie interest in the land. "But when," as was said in Ward v. Dewey, supra, "such a claim appears to be valid upon the face of the record, and the defect can only be made to appear by extrinsic evidence, particularly if that evidence depends upon oral testimony to establish it, it presents a case for invoking the aid of a court of equity to remove it as a cloud upon the title." The mortgage here fully complies with the definition of a cloud. On its face there is nothing to show it to be either invalid or defective. If recorded, there would be nothing upon the face of the record to put a purchaser at ease. He would have to pursue his inquiries into extrinsic matters, and, under such circumstances, the cases are, we think, unanimous in holding that the owner may bring his action for a cancellation or surrender.

A careful distinction is to be drawn between the defect in an instrument which goes to its validity, and a mere insufficiency which the claimant would be compelled to supply in an action to enforce it, but which still leaves it prima facie valid. In the former case, there is no cloud; in the latter, there is. The insufficiency last spoken of exists, in the nature of things, in every mortgage. It is but a lien; a lien is not enforceable without a liability; and that liability must be proved by extrinsic evidence. This fact works out an entirely different result from that in the numerous tax-title cases. There the interest of the claimant is, if it exists at all, absolute in its nature. That interest is conferred if the proceedings are sufficient, and nothing is obtained if they are not. Proof of the instruments themselves is, if they are sufficient, all that is necessary. But the reasoning of these other cases does not conflict with the cases entertaining jurisdiction in the case of mortgages, where additional

proof is necessary. Jurisdiction is, in any case, refused only when the instrument in question is insufficient to create any sort of interest in the land, absolute or conditional; and where such an interest exists prima facie, jurisdiction is not refused merely because the practical enforcement of that interest might compel the claimant to supply additional proof. The cases of Washburn v. Burnham, 63 N. Y. 132, and Swarthout v. Ranier, supra, do not conflict with this view. In the former it was held that an executory contract for the sale of land, executed by one claiming to be the authorized agent of the owner, would not be canceled as a cloud. The reason given was that any one claiming rights under the contract would first be compelled to establish the authority of the alleged agent. In the Swarthout Case, an action was maintained to cancel a mortgage executed by a widow who had authority under her husband's will to execute one if she needed the proceeds for her support. The ground of decision was that the mere execution of the mortgage was a declaration that the need existed, and that it was thus presumptively valid. Finch, J., said that "the presumption would be, in the absence of proof of the extrinsic facts, that the conditions upon which the wife could lawfully have executed the mortgage existed, and that the burden of showing the contrary would rest upon those who assailed the transaction." Page 503, 143 N. Y., and page 727, 38 N. E. It is easy to misconstrue such language as this by failing to consider it in connection with the matter in hand. Looking at the decision, it is seen that both the Washburn and Swarthout Cases dealt with an instrument executed by one who did not hold the legal title. Unless, therefore, the position of the party executing was such as to raise the presumption of a right so to do, no estate or interest was, even prima facie, created, and the title was not clouded. The presumption of validity, with its consequent burden of proof upon the true owner, was all that made the instrument a cloud. Here the contrary appears. The mortgage was executed by the true owner, and creates a prima facie lien, although, in order to enforce that lien, the mortgagee would have to furnish extrinsic proof. In spite of this, however, it creates a prima facie interest in the land, to destroy which the plaintiff would be obliged to adduce extrinsic proof; and it is this latter fact which renders it a cloud.

No just or logical distinction can, we think, be drawn between this case and those cited where the defense rested upon parol evidence. The facts in this case which show the mortgage to be invalid may be more easily ascertainable, and more conclusively convincing, than in those cited. However, the record of the receivership suit is just as clearly extrinsic matter as are transactions between the mortgagor and mortgagee. This mortgage refers to the suit, and so does any other mortgage refer to its accompanying bond. But to pursue the one or the other inquiry is to go beyond the instrument and the record. Where the defense lies in parol testimony, then, doubtless, as was said in Ward v. Dewey, supra, the case is peculiarly one for the cognizance of equity; but no case of which we are aware prescribed any other condition for the maintenance of the action than that the facts in defense shall be extrinsic matter. Possibly there is a con-

trary intimation in Schroeder v. Gurney, 73 N. Y. 430.    In that case
the sheriff's certificate of sale, which was sought to be canceled, was
shown to be harmless by the record of a trust deed in the very county
clerk's office where the judgment was entered upon which the certifi-
cates issued.    Miller, J., said (page 436):

"This rule [permitting cancellation] is more particularly applicable where
parol evidence is required, and does not, we think, embrace a case, similar
to the one at bar, where the entire evidence is a deed on record in the same
county clerk's office where the judgment is docketed under which the claim
is made."

And reference was made to the accessibility of the necessary proof.
But, the deed being recorded, the plaintiff's title was good upon the
face of the record; and, though the opinion seems to intimate that the
nature of the extrinsic proof might influence the decision of equity
as to entertaining or refusing jurisdiction, no attempt is made to for-
mulate a rule for the guidance of the courts.    All that is held is that,
upon the circumstances there appearing, jurisdiction would not be
taken; and the language used indicates, we think, little more than
that equity is especially quick to entertain jurisdiction where the evi-
dence is inaccessible or apt to be lost,—a view expressed in many
other cases.

The later case of Smith v. Reid, 134 N. Y. 568, 31 N. E. 1082, seems
to confirm this view of the law.    There an action was entertained to
cancel, in favor of a purchaser under a judgment, two deeds of the
land made by the owner without consideration.    Conclusive proof of
the fraudulent nature of the transfers was held to exist in the judg-
ment itself, evidencing an indebtedness of the owner at the time of
the voluntary conveyance; but the action was entertained because
the judgment was an extrinsic fact.    Brown, J., said (page 578, 134
N. Y., and page 1085, 31 N. E.), speaking of the fraudulent character
of the deeds:

"That would only appear upon evidence of Taylor's indebtedness at the time
of the conveyance.   But, while that evidence would exist upon the record in
the form of judgment, it would not be any part of the record of the title to
the land, but would be extrinsic thereto."

This result seems to us to furnish both the most satisfactory
working rule and the most precise and logical one.    An unmistak-
able line can be drawn between those cases where the defect ex-
ists upon the face of the record and those where it does not.    But,
if a distinction is once recognized between extrinsic proof which
is near at hand or durable or convincing, from that which is fur-
ther removed or not so satisfactory in its nature or more apt to
perish, confusion and uncertainty are sure to result.    And such a
distinction serves no good purpose.    Purchasers of real estate are
always loath to pursue their inquiries into matters outside the rec-
ord, and to sift and weigh extrinsic evidence, no matter what its
nature.    They naturally look to their vendor to furnish them with
as perfect a record title as the circumstances permit, and it is
with much caution and reluctance that courts compel them to take
any but a perfect record title.    It is certainly the policy of the

law to make the title to land as clear as possible; and, although courts have steadily refused to resolve doubts merely in order to put the minds of litigants at ease,—to do what would be, in substance, insuring the title,—yet they have never failed to interfere where a title was in fact menaced by instruments apparently qualifying or overthrowing it, but in fact lacking validity. The test, applied again and again, has been whether a resort to extrinsic evidence was necessary in order to establish such invalidity; and we do not think it can be said that this test has been impaired.

It may finally be said that the mortgage does not cloud the title because it has not, so far as appears, been recorded. But an action will lie to prevent a threatened cloud, where the danger is not merely speculative or potential, as well as to remove an existing one. King v. Townshend, 141 N. Y. 358, 36 N. E. 513. Although it does not appear here affirmatively that the defendant has threatened to record the mortgage, that is the only just inference to be drawn from his acts. He has been asked to deliver it up, and has refused, although concededly it has quite fulfilled its purpose, and is functus officio. It is unreasonable to impute to the defendant an intention to retain it simply as a piece of waste paper, and from some entirely idle motive. He has kept it for some purpose, and, since it has no legitimate use, as an instrument of mischief. He might sue upon it, but would be quite unable to maintain the suit. The only other conceivable thing to do with it is to record it. This would cause the plaintiff annoyance, and possibly great damage, and it would be the natural course if the defendant wished to extort a concession from the plaintiff. It would also be the natural course if he intended to claim under it in good faith. Whether we impute to him proper or improper motives, the result is the same. All signs point to an intention to record it at some time, and possibly a very inopportune time for the plaintiff. It may be made a cloud at any moment, and the necessary step is one entirely within the defendant's power. The case is strongly analogous to King v. Townshend, supra. There a tax lease was canceled, although it conferred no interest in the land until notice to redeem had been given to the owner or occupant, and the comptroller's certificate of this fact procured, which steps had not been taken, but, on the contrary had been delayed for many years. Finch, J., said:

"But, if we concede that the imperfect and inoperative lease does not constitute an actual cloud, it is, nevertheless, a decisive step towards the creation of a cloud, and a threat and menace to create one in the future. * * * Its very existence is a threat. It was not given for amusement, or as an idle ceremony. It meant, and could only mean, a purpose to subvert the title and possession of the owner. The further steps necessary to make the result effective lay wholly in the option of the lessee. If he actually served the necessary notice, and filed the prescribed affidavit, and satisfied the comptroller of those facts, the certificate followed as a matter of course, if not barred by a redemption. The lessee, therefore, * * * stands with an effective weapon in his hands, and may strike his blow when he pleases. * * * Nor is it an answer to say that for many years the lessee has omitted to give the notice. That only intensifies the injury and the danger." 141 N. Y. 361, 362, 36 N. E. 514.

This language is quite applicable here; and we have no hesitation in stating the rule to be that, wherever an instrument exists which the holder may so utilize as to convert it into a cloud on title by action of his own, and he refuses to surrender it, and thus put an end to this power, there is a threat to create a cloud which equity will interfere to prevent.

The result of our examination of the authorities is: (1) That, wherever a cloud exists, equity will remove it. (2) That any instrument or instruments sufficient of themselves to create a prima facie estate or interest in land, whether absolute or conditional, which the true owner would be compelled to resort to extrinsic proof in order to destroy, constitute a cloud, although the claimant might himself, in order to take practical advantage of his interest, be forced to resort to extrinsic proof. (3) That the character of the extrinsic proof to which the owner must resort is immaterial. The mortgage in question answers the definition, at least if recorded, and hence should be canceled. We have considered the case at perhaps unnecessary length, because the question presented is important, and, though we regard it as settled upon authority, the reasons in support of the rule seem not to have been definitely set forth, and arguments against it are easily framed. It is necessary throughout to distinguish carefully between actions brought to cancel instruments affecting land, and all others, such as bonds and promissory notes. The difference between the two classes of cases was clearly pointed out as far back as Ward v. Dewey, supra, where Selden, J. (page 525), stated that, in the latter, there was doubt whether equity would assume jurisdiction, but that, where the instrument affected the title to land, it had never been considered a valid reason against such jurisdiction that a perfect defense existed at law. The doubt expressed as to cases of the other class has been resolved against the jurisdiction of equity (Town of Venice v. Woodruff, 62 N. Y. 462; Fowler v. Palmer, Id. 533; Insurance Co. v. Reals, 79 N. Y. 202), but the attitude of the court with regard to instruments affecting the title to land has never altered.

The order and judgment appealed from should be reversed, with costs of the trial and appeal, and the demurrer overruled, with leave to the defendant to answer over within 20 days upon payment of costs. All concur.