## CHARLTON v. SHEIL.

(Supreme Court, Equity Term, Monroe County. May 12, 1916.)

1. **VENDOR AND PURCHASER** ☞78—CONSTRUCTION OF CONTRACT—TIME AS OF THE ESSENCE.

Where a contract for the purchase of land provided that the defendant would pay $100 upon plaintiff's accepting the offer, and "six months after or before" make another payment and give a mortgage for the balance, in view of the fact, known to the defendant, that portions of the land were used for planting and raising of nursery stock, and of plaintiff's frequent inquiries of the defendant, before the second payment became due, whether or not he expected to fulfill the agreement, to which defendant made no reply, time was of the essence of the agreement.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 121–125; Dec. Dig. ☞78.]

2. **VENDOR AND PURCHASER** ☞78—CONSTRUCTION OF CONTRACT—TIME AS OF THE ESSENCE OF THE CONTRACT—ACTS OF THE PARTIES.

Where the plaintiff refused the defendant's request for an extension of the time of payment due on a contract for the purchase of land, time was thereby made of the essence of the contract.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 121–125; Dec. Dig. ☞78.]

3. **VENDOR AND PURCHASER** ☞77—CONSTRUCTION OF CONTRACT—TIME OF PERFORMANCE AND PAYMENT.

Where a contract for the purchase of land provided for the payment of $100 down, and "six months after or before" a further portion of the purchase price was to be paid, a mortgage given for the balance, and plaintiff to furnish a warranty deed, the payment, delivery of the deed, and delivery of the mortgage became due on the last day of six months from the date of the instrument.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. § 120; Dec. Dig. ☞77.]

4. **VENDOR AND PURCHASER** ☞185—PAYMENT OF PURCHASE MONEY—EFFECT OF FAILURE OR DELAY—NOTICE.

Where an agreement for the purchase of land provided for a second payment, a mortgage for the balance, and delivery of deed by the defendant six months after the date of the instrument, plaintiff's previous frequent inquiries as to whether defendant would make the payment when due, and his refusal of defendant's request to extend the time of payment indefinitely, constituted a sufficient notice to the defendant that upon his failure to live up to his part of the agreement plaintiff regarded the incident as closed.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 369–372; Dec. Dig. ☞185.]

5. **SPECIFIC PERFORMANCE** ☞97(1)—EFFECT OF DEFAULT OF PLAINTIFF.

Where the first payment on an agreement for the purchase of land was not substantial, and on the date the second payment became due plaintiff was ready to perform, defendant, having failed to answer plaintiff's inquiries as to whether or not he would make the second payment when due and having failed to make that payment or give any time when it would be made, is not entitled to specific performance of an agreement which he alone violated.

[Ed. Note.—For other cases, see Specific Performance, Cent. Dig. §§ 286–290, 294, 295; Dec. Dig. ☞97(1).]

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

6. QUIETING TITLE ⊛⟶7(2)—CLOUD ON TITLE.

　　Where defendant placed an agreement for the purchase of land on record after his own default in payment of the purchase price, plaintiff can maintain an action to remove this apparent cloud on his title.

　　[Ed. Note.—For other cases, see Quieting Title, Cent. Dig. §§ 15, 18, 19, 25; Dec. Dig. ⊛⟶7(2).]

Action by John Charlton against Christopher J. Sheil to remove cloud on title to real estate. Judgment for plaintiff.

Andrew E. Tuck, of Rochester, for plaintiff.
George Fort Slocum, of Rochester, for defendant.

CLARK, J. Plaintiff brings this action for the cancellation of a certain instrument dated May 21, 1914, whereby defendant offered to give to plaintiff $25,000 for his farm, located partly in the city of Rochester and partly in the town of Brighton, Monroe county, containing 100 acres of land, which instrument provided that defendant would pay $100 down upon plaintiff's accepting the offer, and "six months after or before pay $9,900 of the purchase price, and also give a mortgage for the balance of $15,000, payable in ten years, or before, with interest at 5 per cent. per annum." The instrument also provided that plaintiff was to furnish a warranty deed, good title, tax searches, etc. Both parties signed the instrument, and defendant paid to plaintiff $100.

The time for the payment of the $9,900 expired, according to the terms of this instrument, on the 21st day of November, 1914. Defendant did not make the payment, and offered as an excuse for such failure that owing to the European war there had arisen an unexpected stringency in the money market. At least two or three times between the date of the instrument and the 21st day of November, 1914, when the $9,900 was to be paid, plaintiff informed defendant that he desired to know whether defendant would perform his part of the contract, and pay this money on or before the 21st day of November, 1914, because portions of this land were used for raising nursery stock, and plaintiff wanted to know whether or not defendant would make the payments, so he could make preparations for fall planting of nursery stock, in case the plan fell through. Defendant made no reply to these inquiries, and especially to a letter which plaintiff wrote to him November 1, 1914, asking him, in substance, whether or not he was going to make the payments.

On the 21st day of November, 1914, which was the last day stated in the instrument in question for the payment of the $9,900, defendant and his counsel saw plaintiff and requested further time within which to make the payment, which was due that day. Plaintiff asked defendant how long a time he would want, and defendant, or his attorney, replied that they could not tell, but they would get the money as soon as possible, but did not fix any time within which he would make the payment. Plaintiff refused to grant any extension of time. He had on several occasions inquired of defendant if he was going to fulfill his agreement and make the payment by November 21st, and

had received no reply. The latter knew ever since the instrument had been made that not later than November 21, 1914, he must pay the $9,900, and not until the last day had he asked for any extension of time. Plaintiff, not receiving any reply to his inquiries as to whether or not defendant would make his payment, and receiving no promise or agreement as to any definite time when defendant would make the payment, went on and planted nursery stock on portions of the land in question, as he had a right to do.

On the 19th of January, 1915, and nearly two months after the time provided for in the instrument in question for the payment of the $9,900, defendant recorded it in the Monroe county clerk's office, and not until the 20th day of May, 1915, within one day of six months after his failure to perform on the 21st day of November, 1914, and more than three weeks after this action had been begun, defendant tendered to plaintiff $10,400, being the amount of the payment which should have been made November 21, 1914, with interest, and a bond and mortgage for $15,000, running to plaintiff, covering the property in question, and a deed, which he asked plaintiff to execute. Plaintiff refused to accept the money, or the bond and mortgage, or to execute the deed, claiming that, defendant having failed to comply with the terms of the agreement on his part to be kept and performed, he was in default, and plaintiff was not obliged to carry out the agreement.

[1, 2] It is the contention of the plaintiff that the instrument in question was a mere option. Defendant's contention is that it is a land contract, and on its execution he became the equitable owner of the property in question, subject to plaintiff's lien for the balance of the unpaid purchase price of the property. Whether the instrument in question is an option or land contract, I am satisfied that under the evidence in this case, and in view of the use made of this property, which was well known to defendant, portions of it being used for the planting and raising of nursery stock, and in view of plaintiff's frequent inquiry of defendant before November 21, 1914, whether or not he expected to fulfill the agreement, to which inquiries defendant made no reply, it must be held that time was of the essence of the agreement; but, if there was any doubt about it under the terms of the instrument itself, the actions of the parties clearly made it so, for when plaintiff refused defendant's request for an extension of payment to an indefinite time, they then and there made time of the essence of the transaction.

When plaintiff had asked defendant several times if he intended to fulfill his agreement and make the payment November 21, 1914, one of said inquiries being by letter dated November 1, 1914, he was at least entitled to some sort of a reply, and defendant was not quite fair in refusing to give it. Moreover, he would be in better light in a court of equity, in asking for specific performance of this agreement after his own default, if at the time the payment was due, and he failed to make it, but asked for an extension of time, he had given plaintiff any sort of an idea when the payment would be made. When he asked for an extension, plaintiff did not at first refuse it, but asked him how long a time he wanted, or when he would be able to make the payment, or that in substance, and defendant replied in a most un-

satisfactory way, saying that he could not tell how long, but that he would get the money as soon as possible. That really meant nothing to the plaintiff, and it would be most unreasonable and inequitable to expect plaintiff to hold his property and stand ready to convey it to defendant at any time, when the latter could not or would not give him any sort of assurance as to when the payment would be made.

[3] Much stress is laid by defendant on the fact that the instrument itself does not state the precise date on which the deed was to be delivered. The instrument was made May 21, 1914. It provided for the payment of $100 down, and "six months after or before" $9,900 of the purchase price was to be paid, and then a mortgage for the balance of $15,000 was to be given back to plaintiff, and it said, "You [plaintiff] to furnish warranty deed," etc. That plainly meant that at the latest—that is, the last day of the six months—the $9,900 was to be paid, and at that time the deed was to be delivered and the mortgage given back for the balance of the purchase price.

[4] The instrument was not drawn by a lawyer, but by the defendant, and no other construction can properly be spelled out of the language used than that, when the $9,900 was paid and the mortgage given for the balance of the purchase price, the deed was to be delivered. The practical construction placed on the instrument by the parties themselves justifies this interpretation, for on that very day plaintiff prepared, executed, and tendered to defendant a deed of the premises and demanded his money, which defendant refused to pay for the reasons above stated, and then plaintiff plainly notified him that the agreement was terminated, and in view of the circumstances established here it must be held that what he told defendant at that time, together with the correspondence and inquiries between the parties prior to that time, as to whether or not defendant would make the payment when due, to which inquiries he made no reply, taken together, constituted a sufficient notice to defendant that upon his failure to live up to his part of the agreement the plaintiff regarded the incident as closed.

It will be noticed that when this agreement was made the payment made by defendant was not a substantial one. His offer to purchase the farm for $25,000 was in pursuance of a venture to speculate in this property by dividing it up into city lots and selling them. It would be a manifest injustice to plaintiff to say that defendant could hold him indefinitely under an agreement to sell this farm, when so small a payment had been made, when the property was advancing in value, when defendant defaulted in his first substantial payment, and gave no reasonable encouragement as to when any future payment would be made.

[5] Under these circumstances defendant is not entitled to specific performance, for he was the only one who failed to live up to the terms of his agreement. Plaintiff was ready and willing to perform. Defendant was not, and he, having failed to answer plaintiff's inquiries as to whether or not he would make the payment due in November, 1914, and having failed to make that payment, or give any time when the payment would be made, is not entitled to specific performance of an agreement that he alone violated. 36 Cyc. 726; Schmidt v. Reed, 132 N. Y. 108, 30 N. E. 373; Groesbeck v. Morgan, 206 N. Y. 385,

99 N. E. 1046; Babcock v. Emrich, 64 How. Prac. 435; Dwork v. Weinberg, 120 App. Div. 507, 105 N. Y. Supp. 504; Darrow v. Bush, 45 App. Div. 262, 61 N. Y. Supp. 2; Pomeroy on Specific Performance, § 407.

[6] Nearly two months after his default defendant placed this instrument on record in Monroe county clerk's office, and while it stands on the record it would embarrass plaintiff if he should desire to dispose of his property, and he can maintain an action to remove this apparent cloud on his title. Stokes v. Houghton, 16 App. Div. 381, 45 N. Y. Supp. 21; Code Civ. Proc. §§ 1638, 1639. Under the circumstances specific performance must be denied the defendant, and plaintiff is entitled to be relieved from the cloud on his title.

Judgment is therefore directed in favor of plaintiff for the relief demanded in the complaint, with costs to be taxed. Findings may be submitted, and judgment entered accordingly.