Sage *against* Cartwright.

A sale of lands, on execution against the grantee (by quit-claim deed) of one who was in possession under a contract of purchase, does not give to the purchaser any interest in the lands; such sale being prohibited by statute. (1 *R. S.*, 744, § 4.)

One holding a contract from the surveyor-general for the purchase of a lot of land, on which he had paid a fourth part of the purchase money, conveyed by quit-claim deed three acres of the land to J. C., and by a similar deed and an assignment of the contract, conveyed the residue of the lot to the defendant; both grantees having notice of the extent of the grantor's interest, and of each other's purchase, and the defendant giving the grantor his bond for the payment of the balance due on the state contract. This balance was paid by the defendant, and a patent obtained from the state for *all the land described in the contract.* The plaintiff came into possession of the three acres under a sheriff's sale on execution against J. C., and defendant brought ejectment against him to recover possession of the three acres. A bill filed to restrain the prosecution of that action and to obtain a conveyance of the three acres of which the defendant had fraudulently (as was alleged) obtained the legal title, was dismissed, on the ground that the conveyance to J. C. could have no greater effect than to give to the latter the equitable interest of the grantor in the three acres by virtue of his contract; and that as such an interest could not be sold on execution, the plaintiff acquired by his purchase neither a legal nor an equitable title.

On the 6th of December, 1831, Harris Medbury obtained a contract from the surveyor-general for a piece of land in Norwich, Chenango county, on which he paid one-fourth of the price at the date of the contract. On the 2d of May, 1835, Medbury conveyed by quit-claim deed to John Curtis,

three acres and twenty-seven perches of the land included in the contract, of which Curtis was then in possession. On the same day Medbury conveyed to the defendant, by a similar deed, the residue of the land included in his contract with the state. Both Curtis and the defendant were aware at the time of each other's purchase, and of the extent of Medbury's interest in the land. At the time of executing the deed to Cartwright, Medbury also assigned to him his right to so much of the land in the contract with the state as was included in the deed, by an assignment endorsed on the contract, which expressly excluded the three acres and twenty-seven perches conveyed to Curtis. The defendant on the same day gave Medbury his bond, conditioned to pay to the state the balance due on the contract.

On the 16th of November, 1839, the Bank of Chenango obtained a judgment against John Curtis, on which an execution was issued, and Curtis's interest in the three acres was sold by the sheriff. The plaintiff bid off the property, and received a deed from the sheriff in December, 1844, under which he succeeded to Curtis's possession.

In November, 1844, Cartwright, having paid the sum due on Medbury's contract, obtained from the state a patent for *all the land described in the contract*, and in 1847 he brought ejectment against Sage, to recover possession of the three acres. The plaintiff filed his bill in this cause to restrain the prosecution of that suit, and to obtain from Cartwright a conveyance of the three acres, alleging that he had fraudulently procured that portion of the lot to be included in his patent.

The supreme court granted the injunction asked for, and the defendant appealed to this court.

*N. Hill, Jr.* for the appellant.

*Warren Newton* for the respondent.

MASON, J., delivered the opinion of the court.

I should entertain no doubt in this case, either as to the justice or legality of the judgment or decree of the court below, had this suit been instituted by John Curtis, or had the plaintiff shown that he had succeeded to the equitable rights of John Curtis in the subject matter of this suit. I think the plaintiff has failed, however, to show any such thing. Curtis was in possession as a purchaser from Harris Medbury, who held a contract from the surveyor-general of the state. The purchase by Curtis and the payment of the consideration by him, and the quit-claim deed from Medbury to him, was effective to give Curtis an equitable title to these premises whenever Medbury's contract with the surveyor-general was paid up. It should be borne in mind, however, that the only interest which Medbury had in these premises, at the time of his sale and conveyance to Curtis, was that of a purchaser in possession under a contract of purchase, and as regards the state with only about one-fourth of the purchase money paid. The most, therefore, that can be said of this quit-claim deed from Medbury to Curtis is, that it was operative to transfer and convey from Medbury to Curtis all his right and claim to this part of the lot. This deed could not transfer any greater interest than Medbury himself had. (1 *R. S.*, 738, § 43; 1 *Comst.*, 242.) The most that can be claimed, therefore, for the quit-claim deed from Medbury to Curtis, is that it operated as an equitable assignment of so much of Medbury's present interest as pertained to these acres, and to that extent was an equitable assignment of so much of Medbury's interest in his contract with the state. Curtis's rights, therefore, rest in a contract of purchase from the state, and if he ever comes into court to obtain a conveyance of this title, he must rest his claim upon this contract of purchase from the surveyor-general. It is not pretended that Medbury had such an interest in these premises at any time as could be sold on a judgment and execution against him. He never

had any right to the land in question except under his con-tract of purchase of the surveyor-general, and that was not such an interest as could be sold on judgment and execution. (1 *R. S.*, 736, § 4; 1 *John. Ch. R.*, 51; 17 *John.*, 356; 3 *Paige*, 220; 9 *Paige*, 422; 10 *Paige*, 562; 2 *Barb. Ch. R.*, 458; 6 *Barb.*, 116; 9 *Paige*, 74; 4 *Paige*, 578; 6 *Hill*, 525.) To hold, therefore, that Curtis had an interest in these pre-mises which could be sold on execution, involves the absurdity of saying that a greater interest passed by the quit-claim deed from Medbury to Curtis than was possessed by the grantor. This must be so, as far as Curtis's rights to acquire this title either of the state or of Cartwright was concerned, for they all rest upon Medbury's contract of purchase from the surveyor-general. If, therefore, it were admitted that Curtis's right of possession, he holding that possession under a deed, could be sold on an execution, which I think we have shown could not be, I do not see how that would help the plaintiff's case. The equitable interest in these lands under contract most certainly would not pass by such a sale, for an execution sale of the possession could not carry with it the interest under the contract to purchase.

If we are right in the views above expressed, then it fol-lows as a consequence that the plaintiff cannot maintain this action, for the reason that he did not, as a purchaser at the sheriff's sale on the judgment in favor of the Bank of Chenango against Curtis, acquire the equitable title of Curtis as purchaser.

I am of the opinion for the reasons above expressed that the judgment of the court below should be reversed, and the bill dismissed with costs.

DENIO, J., did not hear the argument.

All the other Judges concurring,

Judgment reversed.