Landon, J.
The agreement, which antedated the deeds by one day, and expressed their intent and purpose, should be read in connection with them. Thus read, the deeds are shown to have been given by Lucilia Tracy to *280 Howland, Smith, and Tracy," for the purpose of securing, and in consideration of, said loan of $8,240,” made by the grantees to the grantor ; and “ that the said deed ... is a security for said loan for a term not exceeding one year from the date of said deed, . . . and that upon the repayment of said sum of $8,240, with interest, within or at the expiration of one year, by the said Lucilia, . . . the said Howland, Smith, and Tracy, are to reconvey said premises to said Lucilia ; . . . and, in case said sum of $8,240 shall not be repaid during or at the expiration of one year as aforesaid, then it is understood and agreed that the said deed. . . is to become and be a deed absolute, and the said Howland, Smith and Tracy are to become and be the owners in fee simple absolute.” The deeds are thus clearly shown to have been intended as mortgages. This conclusion is also inferable from the facts. The premises at the date of the deeds were worth $30,000. The judgments against the premises were, by the terms of the agreement, to be paid from the money loaned, and presumably were either paid or their amount retained by the grantees from the $8,240. The amount of the outstanding mortgages against the premises was $7,000. It is not presumable that Lucilia Tracy intended to sell property worth $30,000 for $15,240. The grantor remained in possession of the premises for about two years after the delivery of the deeds. She was embarrassed and straitened for money. Stress is laid by the defendants upon the fact that the grantor did not expressly covenant to repay the money.
The cases are to the effect that this is one of several circumstánces to be considered (Horn v. Keteltas, 46 N. Y.605; Morris v. Budlong, 78 N. Y. 543,552; Brown v. Dewey, 1 Sandf. Ch. 56); and here it is to be considered in connection with the repeated statement that the money to be advanced by the grantees is a loan, and that “ said deed-is a security for said loan, for a term of not exceeding one year,” and that upon repayment the grantees should *281 reconvey to the grantor. It is plain that repayment of the loan was contemplated. Nothing is said of the repayment of purchase money, and there is nothing in the agreement indicating that the money advanced by the ¡grantees was purchase money, except that, in case said sum of $8,240 (previously termed a loan) should not be repaid at the expiration of one year, “ then it is understood and agreed that the said deed is to become and be a deed absolutethus clearly indicating that at the date of the transaction said sum was not purchase money, and said deed was not a deed absolute, but was to become so, in case of non-payment of the loan. Clearly, upon the undisputed facts, the deeds were a mortgage to secure the money loaned, and the trial court erred "in refusing the plaintiff’s "request so to find. The agreement that the non-payment of the loan within the time specified should convert the mortgage into an absolute deed did not have that effect. The agreement to turn a mortgage into an absolute deed, in case of default, is one that finds no favor in equity. The maxim, “ once a mortgage always a mortgage,”governs the case (Horn v. Keteltas, supra; Murray v. Walker, 31 N.Y. 400; Carr v. Carr, 52 Id. 251; Remsen v. Hay, 2 Edw. Ch. 535 ; Clark v. Henry, 2 Cow. 324; Morris v. Nixon, 1 How. (U. S.) 118 ; Villa v. Rodriguez, 12 Wall. 323 ; 4 Kent Comm. 143). Since the deeds were a mortgage, the title did not pass to the grantees, but remained in Lucilia Tracy (Barry v. Hamburg-Bremen Fire Ins. Co., 110 N. Y. 1; 17 N. E. Rep. 405 ; Thorn v. Sutherland, 123 N. Y. 236,25 N. E. Rep. 362 ; Shattuck v. Bascom, 105 N. Y. 39, 46; 12 N. E. Rep. 283). The levy under the plaintiff’s attachment was therefore upon Mrs. Tracy’s land, to which she had the legal title. It was not merely an attempted levy upon her equitable right to obtain title. As against Howland, Smith, and Tracy, the levy was valid, and the judgment and execution which followed the attachment became a specific lien upon the land itself, and the land could be sold upon execution.
*282 Howland, Smith and Tracy conveyed the premises, before the attachment was issued, to the defendant, the New York Baptist Union for Ministerial Education. This-defendant, by its answer, admits that $3,000 of the purchase money, with the interest from January 1, 1883, remains unpaid, and that $1,550 of the principal of one of mortgages upon the premises given by Mrs. Tracy also remains unpaid. This defendant, in order to maintain the defense that it is a bona fide purchaser without notice of plaintiff’s rights, must have paid all the purchase money (Sargent v. Eureka Spund Apparatus Co., 46 Hun, 19 Harris v. Norton, 16 Barb. 264; Jewett v. Palmer, 7 Johns. Ch. 65 ; Jackson v. Cadwell, 1 Cow. 622; Boone v. Chiles, 10 Pet. 177; Patten v. Moore, 32 N. H. 382). In equity it has not completed its purchase, but, to the extent of its-payments innocently made before notice of plaintiff’s claim, is entitled to protection. It may therefore retire from the transaction without actual loss, and without further impairing the rights of the plaintiff.
The action is in aid of plaintiff’s execution. Its object is not to re’ach any equitable assets of Mrs. Tracy, but to strip from her legal title to the premises in question the obstructions created by the deeds by which such title, apparently, but not in fact, passed from her to Howland, Smith and Tracy, and from them to the Baptist Union; and thus to show that the lien acquired by plaintiff’s-attachment of the premises, and perfected by her judgment and execution, was valid, and therefore may now be enforced free from the obstructions which seemed to defeat it. Such an action is within the equitable jurisdiction of the court (Beck v. Burdett, 1 Paige, 305; Heye v. Bolles, 33 How. Pr. 266; Rinchey v. Stryker, 28 N. Y. 45 ; Frost v. Mott, 34 Id. 253). Thurber v. Blanck (50 N. Y. 80) does not hold otherwise, but does hold that the attachment, to be effective, must operate upon legal rights,— the precise position of the plaintiff here.
*283 The judgment should be reversed, and a new trial granted, costs to abide the event.
All the judges concurred.
Note on how far rights of action can be regarded as-REAL OR PERSONAL PROPERTY WHICH IS SUBJECT TO AN ATTACHMENT.
In respect to causes of action, the Code only specifically provides for the attachment of causes of action upon contract (§ 648).
This does not prevent the attachment of tangible real or personal property of the debtor of which another person has possession in violation of the debtor’s right.
Thus, although the debtor would have to bring some-action, as replevin, ejectment, or an equitable action to-recover the enjoyment of the property, his creditor may by attachment seize the personal property or obtain a lien on the real property and set up his debtor’s ownership and right to possession as a defense of his seizure.
The result is, that tangible personal property or a legal interest therein is subject to attachment, whether the property is in the debtor's possession or control, or not.
A chose in action on contract, capable of manual delivery,, is subject to attachment.
The debtor’s equitable rights of action, and the creditor’s equitable rights of action to reach property, which the-debtor has precluded himself from reclaiming by making a fraudulent conveyance, must be asserted either by an action under Code Civ. Pro. § 655, or by a creditor’s suit after-judgment. See notes in 23 Abb. N. C. 9 ; 16 Id. 20, 59.

Notes of Cases.

1. Thurber v. Blanck, 50 N. Y. 80. A creditor cannot attach chose in action which has been fraudulently assigned by his debtor. But the non-attachability does not result merely from the character of a chose in action, but because it is a chose in action which has been assigned. If it were tangible property it could be attached notwithstanding the fraudulent assignment. If it were a chose in action, still belonging to the debtor, it could be attached notwithstanding it might be in the possession of others. The court say : “ Debts and dioses in action are to be regarded as legal assets under the attachment laws whenever that process acts directly upon the. *284 legal title, but whenever they are so situated as to require the-exer cise of the equitable powers of the court to place them in that situation, they must be treated, as they always were, as equitable assets •only.”
2. Anthony v. Wood, 96 N. Y. 180. A levy by virtue of an .attachment upon a promissory note creates no lien thereon, where the debtor has parted with his legal title, although with an intent to -defraud his creditors.
The court, in holding that the changes in the provisions of -Code Civ. Pro. § 649, had not changed the former law, say: “ Where the property sought to be attached is capable of manual delivery, including a bond, promissory note or other instrument for the payment of money, the levy is to be made by taking the same into the sheriff’s actual custody. This provision changed merely the mode of making the levy, but in no respect altered the inherent character of the property sought to be attached.....The,note is not turned into a chattel by the new provision.”
3. Hess v. Hess, 117 N. Y. 306. Goods and chattels fraudulently assigned by a debtor to hinder, delay and defraud creditors, are attachable in the hands of the assignee, in an action against the debtor by a creditor 'defrauded by the assignment. The rule which prevents levy under similar circumstances upon equitable assets or choses in action, proceeds upon peculiar grounds, not applicable to chattels of which there can be a manual tradition.
4. McAllaster v. Bailey, 127 N. Y. 583. Money in the hands of an assignee for the benefit of creditors, the avails of the property assigned, is not subject to levy under an attachment issued in an action against the assignor, and a sheriff making such levy is liable ior conversion.
[Here the debtor had no legal title, and no equitable title, but only an equitable interest in the enforcement of the trust he had •created, and in a possible surplus after the payment of debts, etc.]
5. Backus v. Kimball, 27 Abb. N. C. 361. The right to an unpaid legacy, to be paid out of the proceeds of the sale of real estate devised in trust for that purpose to an executor, may be .attached as personal property incapable of manual delivery.
[This was put upon the ground that the debtor, as legatee, had a legal right of action against the executor.]
6. Higgins v. McConnell, 56 Hun, 277; s. c. 9 N. Y. Supp. 588; 30 State Rep. 958. Held, that as the Code of Civil Procedure, § 644, provides that an attachment can be levied only on property not *285 exempt from execution ; and section 1253 provides that the interest of a person holding a contract for the purchase of real property cannot be levied upon by execution, the equitable interest in real property of a person holding a contract is not. therefore, subject to an attachment, notwithstanding section 645 provides that the real property which may be levied on by attachment includes any interest in real property, either vested or not vested, which is capable, of being aliened.
7. Sage v. Cartwright, 9 N. Y. 49. The equitable interest of one in.possession of land under a contract of purchase cannot be sold under an execution.
8. Mechanics’ & T. Bank v. Dakin, 51 N. Y. 519. The fraudulent assignment of a bond and mortgage by a debtor will not prevent its attachment by a creditor. Compare Case 1, above.