(47 App. Div. 459.)

ANGEL v. METHODIST PROTESTANT CHURCH OF WILLIAMSBURGH et al.

(Supreme Court, Appellate Division, Second Department. January 30, 1900.)

VENDOR AND PURCHASER—SPECIFIC PERFORMANCE.

 Plaintiff contracted in 1893 to purchase land owned by a corporation, and used for cemetery purposes; the corporation agreeing to procure necessary legislation to grant it authority to make the sale. Pursuant to such agreement, Laws 1893, c. 352, was passed, prohibiting further interments in such cemetery, and authorizing the corporation to remove the remains interred therein, and the monuments, fences, etc., to some other suitable place, to be procured, and to sell and convey such cemetery, and apply the proceeds to the removal of the remains and the purchase of another cemetery. Soon after, the validity of the act was contested, and held constitutional; but plaintiff did nothing to assert his rights during or subsequent to the litigation, which terminated in 1896, and in 1897 the corporation sold the land to defendant S., who on the same day conveyed it to defendant B. for a greatly increased price. *Held*, that the fact that the remains were not removed at the time of these transfers did not prevent S. and B. from taking title in fee, nor being purchasers in good faith without notice of plaintiff's rights, and that, in the absence of proof that S. purchased with notice of plaintiff's equity, plaintiff was not entitled to specific performance of his contract, but could only recover the amount paid thereon.

Appeal from special term, Kings county.

Action by Frank W. Angel against the Methodist Protestant Church of Williamsburgh and others to enforce specific performance of a contract for the sale of land. From a judgment awarding plaintiff the amount paid on the purchase price, and refusing specific performance, he appeals. Affirmed.

Argued before GOODRICH, P. J., and BARTLETT, HATCH, WOODWARD, and HIRSCHBERG, JJ.

John J. Allen, for appellant.

Charles F. Brown, for respondent George W. Sloane.

David B. Ogden, for respondents Henry Batterman and the Lawyers' Title Insurance Co.

WOODWARD, J. This case was properly disposed of by this court at special term, by a judgment which allowed to the plaintiff the amount he is conceded to have paid at the time of entering into the contract of purchase which he now seeks to have specifically performed. The only question now before this court is upon the dismissal of the complaint, and refusing to grant the judgment demanded.

On the 3d day of April, 1893, plaintiff's assignor entered into a written contract with the Methodist Protestant Church of Williamsburgh for the purchase of certain land, known as "Union Cemetery." At the time of entering into this contract the church had no authority to sell the property, which was held by the church as a "rural cemetery association," under the provisions of chapter 196 of the Laws of 1853, as subsequently amended; but it was agreed in the contract that the church should undertake to procure the necessary legislation to enable it to remove the bodies, etc., and that upon the work being accomplished the church should deliver a deed to the purchaser for and in consideration of the sum of $75,000, payments upon which were to be made from time to time in various ways, not necessary here to detail. Pursuant to this agreement, chapter 352 of the Laws of 1893 was enacted, and it was provided that further interments should not be made in Union Cemetery, and that:

"The Methodist Protestant Church of the Village of Williamsburgh is hereby authorized to remove or cause to be removed from said land the remains of all bodies buried and now remaining therein and all monuments, headstones and lot or plot fences thereon, to some cemetery or other suitable place or places; and to procure by purchase or otherwise, other land to be used for cemetery purposes; and to sell, at public or private sale, the said land now belonging to said Methodist Protestant Church of the Village of Williamsburgh, and by good and sufficient deed or deeds to convey the same to the purchaser or purchasers thereof, and to apply so much of the proceeds of such sale as may be required for such purpose toward payment of the expenses of said removal and the procuring of a suitable place or places to which such removal may be made as herein provided for."

Soon after the adoption of this statutory provision a litigation was instituted to test the validity of the law, the court sustaining the power of the legislature in the premises. Went v. Methodist Protestant Church, 80 Hun, 266, 30 N. Y. Supp. 157, affirmed in 150 N. Y. 577, 44

N. E. 1129. During and subsequent to the determination of the litigation the plaintiff does not appear to have done anything to assert his rights, although given the power to act under various clauses of the contract; and, while we do not think it can be fairly urged that it came to an end under the terms of the agreement in 1894, we are persuaded that the plaintiff is not in a position to warrant a court of equity in interfering as between him and a subsequent purchaser in good faith, who is now in possession of the property. The litigation terminated in 1896, and while there appear to have been some negotiations between the plaintiff and the church looking to the carrying out of the original contract, as well as to the making of a new contract, the plaintiff took no steps to assert his rights under the contract, as he was authorized by the agreement to do; and on the 27th day of November, 1897, the church conveyed the land to the defendant George W. Sloane. By the terms of the contract between Sloane and the church, six acres of land in Cedar Grove Cemetery were conveyed to the church for a new burial ground, at the price of $30,000; none of which has been paid, and Sloane agreed to remove the bodies from Union Cemetery to Cedar Grove Cemetery, which work he has performed, at an expense of $39,500. On the same day the property was conveyed by Sloane to the defendant Batterman for a consideration of $90,000, $10,000 of which was paid down, and immediately transferred to the church, while $80,000 of the amount was deposited with the Manufacturers' Trust Company of Brooklyn, to be paid to Sloane when the provisions of the contracts involved were carried out. The plaintiff urges that as the bodies had not been removed from Union Cemetery at the time of these transfers, and as the sale contemplated conveyance of a fee simple, the instruments were incapable of conferring title during the time that the bodies remained, and, this action being brought before the removal of the bodies, there was no purchase in good faith for a bona fide consideration, without notice of the rights of the plaintiff. We are of opinion, however, that it was within the discretion of the legislature to permit the church to sell the land with the bodies still in the ground,—provision being made for their proper removal to another place of interment,—and that the legislature did authorize such a transfer, if that was a reasonable and proper method of carrying out the provisions of the law. The contention of the plaintiff that the statute, being merely permissive, did not impose the duty on the church of performing its trust, and that it could not cut itself free from the title to the property without having discharged the trust, is of doubtful application to the facts of this case. In Baltimore v. Marriott, 9 Md. 174, cited in 3 Am. & Eng. Enc. Law, 517, it was held that it is a well-settled principle that when a statute confers power and authority upon a corporation, to be exercised for the public good, the words "power and authority" in such case may be construed, "duty and obligation"; and in Gilmore v. City of Utica, 121 N. Y. 561, 568, 24 N. E. 1011, the court say:

"Generally, permissive words used in statutes conferring power and authority upon public officers or bodies will be held to be mandatory, where the act authorized to be done concerns the public interest or the rights of individuals."

In the case at bar the legislature had forbidden further interments in this cemetery, located in a populous community. It must be presumed that the legislature, in taking this step, acted for the public good; and when it went one step further and declared that "the Methodist Protestant Church of the Village of Williamsburgh is hereby authorized to remove or cause to be removed from said land the remains of all bodies buried and now remaining therein," the language is susceptible of an interpretation commanding that these bodies shall be removed, and the statute points out a method of meeting the expenditures necessary for carrying out this work. To do this, the church is authorized to "sell, at public or private sale, the said land now belonging to said Methodist Protestant Church of the Village of Williamsburgh, and by good and sufficient deed or deeds to convey the same to the purchaser or purchasers thereof, and to apply so much of the proceeds of such sales as may be required for such purpose toward payment of the expenses of said removal and the procuring of a suitable place," etc.; and it is further provided that this act shall take effect immediately. It is not necessary, however, that we hold the statute to be mandatory, compelling a removal of the bodies; for, treating its language as permissive merely, the result is the same. The statute clearly contemplates the sale and removal as practically cotemporaneous acts, though either might precede the other. It is quite within the terms of the act to assume that a sale of the land might be necessary to enable the corporation to procure another burial lot, and pay the cost of the removal of the bodies. Under such circumstances, the deed, if made prior to removal, would be subject to the easement which the lot owners held, and would only be extinguished upon a removal of the bodies; but, where they are removed, the deed takes effect in accordance with its terms. There is nothing repugnant to morals or religion in this transaction. The rights of the dead are protected, and the tenure of the lot owners remains unimpaired. The right to make use of the land is restrained until all easements are extinguished, but this does not prevent the possessing of title subject thereto. The purposes of the law have been fully carried out, under the provisions of the contract entered into between the defendants Sloane and the church, at a large expenditure on the part of the former. The property has been reduced to possession by Batterman, and the equities are so preponderating in his favor that it would ill become this court to attempt to. devest him of his title, especially as there is no evidence which would warrant us in concluding that defendant Sloane purchased the property with any notice of plaintiff's equity in the premises.

The judgment appealed from should be affirmed, with costs. All concur, except HIRSCHBERG, J., taking no part.