HARMON NATIONAL REAL ESTATE CORPORATION, Plaintiff, *v.* ARTHUR SWANSON and Another, Defendants.

Municipal Court of New York, Borough of Manhattan, First District, February 4, 1935.

*Isaac Roth* [*A. Bertram Roth* of counsel], for the plaintiff.

*Samuel Bloom*, for the defendants.

GENUNG, J. On July 28, 1928, defendant Swanson signed a contract for the purchase from plaintiff of real property located in the borough of Richmond, city of New York, for the sum of $1,820, payable in installments, with interest. On June 11, 1929, Swanson assigned said contract to one Venzel Smidt, who thereby, in writing, assumed the obligations of such contract. On January 8, 1930, said Smidt assigned, by a similar writing, said contract to his brother, the defendant Nils B. Smith. Plaintiff "approved" both assignments. Default was made in the payment of several of the monthly installments and of interest, and plaintiff now seeks to recover the same from both the original vendee and the ultimate assignee.

Swanson, the original vendee, protests that he is not liable because he signed as the agent of a disclosed principal, Venzel Smidt; defendant Smith seeks to avoid liability upon the claim that he merely acted as the agent and attorney in fact for Smidt and is not liable on the contract because he is a mere assignee. Both defendants also claim that the contract is unenforcible because of false representations made by plaintiff's agents which induced the making of the contract.

At the time of the commencement of this action, the entire purchase price was not due; hence plaintiff may maintain this action to recover the intermediate installments without a tender of the deed. (*Eddy* v. *Davis*, 116 N. Y. 247; *Queens Park Gardens* v. *Spar*, 134 Misc. 40; *Loewer Realty Co.* v. *Palladino*, 226 App. Div. 391.)

Defendant Swanson claims that prior to the making of the contract he was a salesman in plaintiff's employ and introduced Venzel Smidt to plaintiff as a prospective purchaser of land, but that when the contract was to be signed, it was discovered that Smidt was a minor. He says that thereupon it was suggested

that Swanson sign the contract on Smidt's behalf and reassign it to Smidt when he reached his maturity, and Swanson accordingly did sign the contract in his own name. Aside from the fact that it is doubtful, to say the least, that plaintiff ever knew of any such arrangement, the defendant Swanson is nevertheless liable upon his signed agreement. When a sale is made to one who is known to the vendor to be an agent, and only the personal obligation of the agent is taken for the price of the property sold, at least the *prima facie* presumption arises that the personal credit is given to the agent alone. (*Jones* v. *Gould*, 200 N. Y. 18.)

" Where a party signs a contract in his own name, even though he is acting for another, he is personally bound thereby. (*Magee* v. *Atkinson*, 2 Mees. & W. 440; *Meyer* v. *Redmond*, 205 N. Y. 478, and cases cited.) If the other party to the contract elects to hold the signer thereof, parol evidence is not admissible to release him from the obligation which he has voluntarily assumed." (*Gordon Malting Co.* v. *Bartels Brewing Co.*, 206 N. Y. 528, 537.)

Assuming that defendants' version is true, it is clear that plaintiff refused to contract with Smidt, a minor, and that Swanson accordingly pledged his personal credit and hence is liable. Nor is Swanson released because of the assignment of the contract. Although the assignee assumed the duty of performance, plaintiff did not expressly release the assignor and the mere assent to the assignment does not operate as a release. (66 C. J. 1056; *Taroll* v. *Syracuse Inv. Corp.*, 151 Misc. 634, 638; affd., 241 App. Div. 912.)

Defendant Smith on January 6, 1930, in writing, assumed the obligations of the contract, agreed to make the payments " and in all things to carry out and perform the same." He may not now be heard to say that he was only the agent or attorney in fact for his brother and thus attempt to foist sole responsibility upon Smidt, who is now in Europe.

Nor have defendants sustained their defense of fraud. Their claim is that plaintiff represented that it would resell the lots for the purchaser within three years at a profit of $200 per lot. At the time of the purchase the vendee received a paper, which was made a part of the contract, specifically stating that plaintiff does " not agree to return a customer's money or sell his lots." The purchaser signed that paper " indicating that you [he] have read this Notice."

" It has often been held that when a party to a written contract accepts it as a contract he is bound by the stipulations and conditions expressed in it whether he reads them or not. Ignorance through negligence or inexcusable trustfulness will not relieve a party from his contract obligations." (*Metzger* v. *Ætna Ins. Co.*, 227 N. Y. 411. 416.)

Or, as was said in *Pimpinello* v. *Swift & Co.* (253 N. Y. 159, at p. 162): " If the signer could read the instrument, not to have read it was gross negligence; if he could not read it, not to procure it to be read was equally negligent; in either case the writing binds him."

Fraud must be established by clear, positive and convincing evidence (*Karpas* v. *Brussell*, 217 App. Div. 550, 554; *Waggoner* v. *Jageacks*, 241 id. 324, 328), for " the presumption of honesty prevails, unless overcome by irresistible evidence of double dealing." (*Snow* v. *Wathen*, 127 App. Div. 948.)

" The courts will be vigilant to prevent the rescission for fraud of a contract deliberately made unless the fraud is admitted or proven by most satisfactory evidence." (*Adams* v. *Gillig*, 199 N. Y. 314, 323.)

The testimony as to the inducement to enter into the contract is " subject to the infirmity that in proportion to their relative importance it is unlikely that matters of real moment would be suffered to remain in parol " (*Hottenroth* v. *Mickey*, 178 App. Div. 742, 743), particularly where the writing clearly expresses the contrary. The inherent vice in these attempted defenses is well summed up in *Graffenstein* v. *Epstein & Co.* (23 Kan. 443): " Attention to business and prudence in making contracts are of no small importance; * * * A disposition, after entering into a contract which proves unfavorable, to search for some means of getting out of it, is unfortunate; it encourages misconstruction of statements, misrecollection of words, and willful falsehood. A party who finds on inquiry that he cannot avoid his contract, except by proof of misrepresentations by the other party, is under fully as strong temptation to impute such misrepresentations, as a party seeking a contract is to make them."

It is most improbable that plaintiff, having a number of its own lots for sale, would make any agreement for the resale of defendants' lots, and plaintiff stated in simple, unequivocal language that it would not return " customers' money or sell his lots." No person of ordinary intelligence would believe that plaintiff insured a profit to its purchasers within three years or any other period. In any event, the claimed representation is not actionable, and the court does not believe that it was made.

Plaintiff may have judgment against both defendants. Ten days' stay.