In the Matter of the Estate of HUBERT V. A. A. DE STUERS, Deceased.

Surrogate's Court, New York County, August 17, 1950.

*Hamilton McInnes* and *Samuel E. Lepler* for State Tax Commission.

*Abberley, Bryde, Kooiman, MacFall & Amon* for Pieter J. Kooiman, as ancillary administrator *c. t. a.* of Hubert V. A. A. De Stuers, deceased.

FRANKENTHALER, S.   The sole question to be determined on this appeal by the State Tax Commission from an order declaring the estate exempt from tax is whether certain realty, of which the testator died seized, forms a part of his taxable estate within the meaning of section 249-p of the Tax Law.

The testator, a nonresident alien, owned an undivided interest in a parcel of improved realty located in this county, which prior to his death he contracted to convey to his co-owner.   The contract authorized the vendee to take immediate possession of the entire premises and imposed upon the vendor the obligation of procuring, before the closing of title, releases surrendering or judgments terminating the inchoate rights of dower, if any, of two former wives of the vendor, from whom he had been divorced prior to 1930.

Subsequent to the execution of the contract but prior to the date therein set for closing, the testator died, without having procured the elimination of the claims of dower.   Proper

releases, however, were obtained by the ancillary administrator *c. t. a.,* and, pursuant to an order of this court obtained under section 227 of the Surrogate's Court Act, the latter conveyed title to the premises and delivered the requisite deed.

Section 249-p of the Tax Law provides: '' A tax is hereby imposed upon the transfer of so much of the net estate of every person dying on or after the effective date of this article, who, at the time of death, was a nonresident of this state, as consists of real property situated * * * in this state.'' Respondent insists that when the testator died his New York estate did not consist in any part of real property and urges as a foundation for this contention the doctrine of equitable conversion. He claims that the execution of the original contract of sale worked a conversion of the real property into intangible property which at the time of testator's death had a tax situs at his domicile.

The doctrine of equitable conversion provides that a court of equity will, for certain purposes, consider the interest of a vendor after the mere execution of a contract for the sale of realty as already converted into personal property and the interest of the vendee as realty, even prior to actual conversion, as if the mutual covenants contained in the contract had already been executed. The vendor having manifested an intention to convert the realty at a future date, the court will regard the contract as already performed and the vendee as the '' equitable owner '' (*Williams* v. *Haddock,* 145 N. Y. 144; *Matter of City of New York [Edgewater Road],* 138 App. Div. 203, affd. 199 N. Y. 560; *Persico* v. *Guernsey,* 129 Misc. 190, affd. 222 App. Div. 719; *Moore* v. *Burrows,* 34 Barb. 173; *Franklin Sav. Bank.* v. *Ascension Mem. Church,* 55 N. Y. S. 2d 808; 4 Pomeroy on Equity Jurisprudence, § 1159 *et seq.,* p. 472 *et seq.;* 4 Williston on Contracts, § 927, p. 2604; 18 C. J. S., Conversion, § 1 *et seq.,* pp. 45, 48). The doctrine of conversion thus provides a convenient formula with which to describe the action which a court of equity will take in specifically enforcing the contract as between the parties thereto. As the purchaser in the eyes of the court is already the '' equitable owner '' of the premises, the purpose of the action is merely to protect that ownership by terminating the outstanding legal title (*Garfein* v. *McInnis,* 223 App. Div. 28, affd. 248 N. Y. 261).

However, although a court of equity may thus treat a realty contract as already executed for certain purposes, it is clear that unless the rules of law based upon or growing out of an *application* of that doctrine have the combined effect of substantially terminating the interest of the vendor in the property

prior to the conveyance and of converting his interest into a mere chose in action for the purchase money, such vendor must be regarded as the owner of the property until such conveyance is made and his estate must be taxed therefor. As ownership consists of the aggregate of rights and privileges which are possessed with respect to specific property, a determination as to whether the vendor remains the owner of the property prior to the conveyance depends upon the substantiality of his interest in the land after the execution of the contract.

Subsequent to such execution and until an actual conveyance is made, the vendor retains full legal title to the premises. In addition thereto, the law confers upon him a so-called vendor's lien (*Freeson* v. *Bissell,* 63 N. Y. 168; *Thomson* v. *Smith,* 63 N. Y. 301; *Burkhardt* v. *Babcock,* 42 Hun. 651, opinion *sub nom. Burank* v. *Babcock,* in 3 N. Y. St. Rep. 458; *Rowley* v. *Durfey,* 230 App. Div. 402; *Charles* v. *Scheibel,* 128 Misc. 275, affd. 221 App. Div. 816; *Champion* v. *Brown,* 6 Johns. Ch. 398; *Conners* v. *Winans,* 122 Misc. 824; 27 R. C. L., Vendor and Purchaser, § 346, p. 598), which exists in his favor even where possession as well as title is retained by him (*Charles* v. *Scheibel, supra*). In the event of a default by the vendee, the vendor may institute an action for specific performance to compel the vendee to accept the premises and the title thereto and to make payment therefor (*Crary* v. *Smith,* 2 N. Y. 60; *Jenkins* v. *Fahey,* 73 N. Y. 355; *Woodruff* v. *Germansky,* 233 N. Y. 365; *Neponsit Holding Corp.* v. *Ansorge,* 215 App. Div. 371; *Duke* v. *Wasserman,* 191 Misc. 849), or he may proceed to foreclose the lien and free the property of the contract. In the latter event, he may under proper circumstances simply foreclose all further rights of the purchaser and retain the land unencumbered (see *Clark* v. *Hall,* 7 Paige Ch. 382). The court may, however, afford the vendee a further opportunity to accept the land and receive a conveyance thereof upon payment of the purchase price, in default of which the property at vendor's option may be sold for his benefit, the proceeds applied to payment of the purchase price and a deficiency judgment entered against the vendee for the balance (*Clark* v. *Hall, supra*; *Thomson* v. *Smith,* 63 N. Y. 301, *supra*; see *Strauss* v. *Bendheim,* 162 N. Y. 469).

Similarly, where the vendee has defaulted, the vendor may institute an action to cancel the contract as a cloud on his title (*Charlton* v. *Sheil,* 95 Misc. 321; *Kitching* v. *Browne,* 119 Misc. 513), and an action in ejectment will lie to recover actual possession of the premises (*Powers* v. *Ingraham,* 3 Barb. 576; *Burkhart* v. *Tucker,* 27 Misc. 724).

The vendor may also elect to hold the property and sue at law for the purchase money (*Charles* v. *Scheibel,* 128 Misc. 275, affd. 221 App. Div. 816, *supra*; *Eddy* v. *Davis,* 116 N. Y. 247; *Queens Park Gardens* v. *Spar,* 134 Misc. 40), holding himself in readiness to perform by conveying after receiving payment (*Eddy* v. *Davis, supra*). Moreover, he may bring an action for any installments of such price which may accrue under the contract before the obligation arises on his part to convey (*Queens Park Gardens* v. *Spar, supra*; *Harmon Nat. Real Estate Corp.* v. *Swanson,* 154 Misc. 380), and when the purchaser has repudiated the contract, the vendor may also elect to treat the contract as broken, retain the property and sue merely for damages (*Smyth* v. *Sturges,* 108 N. Y. 495; *Schmaltz* v. *Weed,* 27 App. Div. 309; *Bensinger* v. *Erhardt,* 74 App. Div. 169; *Hayden* v. *Pinchot,* 172 App. Div. 102; *Palmer* v. *Golden,* 221 App. Div. 360).

Where the contract has been assigned by the vendee and the assignee has taken possession of the property, although no personal judgment may be obtained against him for the purchase money unless he has assumed the obligations of the purchaser (*Langel* v. *Betz,* 250 N. Y. 159; *Hugel* v. *Habel,* 132 App. Div. 327; *Tarolli* v. *Syracuse Inv. Corp.,* 151 Misc. 634, affd. 241 App. Div. 912; annotation, 59 A. L. R. 954), an action in rem may be brought by the vendor against the land to foreclose his lien, to oust the assignee from possession and to secure an accounting of the rents and profits (*Champion* v. *Brown,* 6 Johns. Ch. 398, *supra;* cf. *Burkhardt* v. *Babcock,* 42 Hun 651, opinion *sub nom. Burank* v. *Babcock* in 3 N. Y. St. Rep. 458, *supra*).

Where the vendor owns only an undivided fraction of the property, he may, while the contract is still in existence and the purchase price remains unpaid, bring an action to partition the premises (see *Crippen* v. *Spies,* 255 App. Div. 411).

However, no legal action need be taken to bring the contract to an end or to enforce the vendor's lien. The necessary effect of an abandonment of the contract by the vendee is to leave the title to the land in the vendor with the burden of the contract removed (*Crippen* v. *Spies, supra*). The vendor may treat the contract as rescinded, keep any installments already paid and also keep the property or resell it for his own benefit (*Beveridge* v. *West Side Constr. Co.,* 130 App. Div. 139; *Ketchum & Sweet* v. *Evertson,* 13 Johns. 358; *Supreme Housing Corp.* v. *Schreiber,* 125 Misc. 817). No duty exists to account for such installments previously paid and no action will lie for their recovery (*Havens* v. *Patterson,* 43 N. Y. 218; *Lawrence* v. *Miller,* 86 N. Y. 131; *Lakoschowsky* v. *Utopia Land Co.,* 125 App. Div. 827). In no

event is there a need to revest the property in him, as he has never parted therewith.

Indication of the vendor's power over the land itself is also found in the fact that he can, while the contract is still in force, convey complete ownership of the land to a bona fide purchaser who receives the property without notice of the contract (see *Macauley* v. *Smith,* 132 N. Y. 524; *Angel* v. *Methodist Prot. Church,* 47 App. Div. 459; *Pollack* v. *Viele,* 273 App. Div. 871, affd. 298 N. Y. 670; cf. *Ely* v. *Scofield,* 35 Barb. 330; *Ten Eick* v. *Simpson,* 1 Sandf. Ch. 244; 58 C. J., Specific Performance, § 87, p. 923; 66 C. J., Vendor and Purchaser, § 905, p. 1092).

Equally illuminating is the fact that the interest of the vendor is subject to levy under a judgment procured against him, and the land may be sold upon execution, although the purchaser of the fee with notice of the contract takes subject thereto (*Moyer* v. *Hinman,* 13 N. Y. 180; 66 C. J., Vendor and Purchaser, § 834, p. 1064, citing *Schmidt* v. *Steinbach,* 193 Mich. 640; *Welles* v. *Baldwin,* 28 Minn. 408, and *Charles* v. *Taylor,* 1 Heisk. [Tenn.] 528; 4 Williston on Contracts, § 936, p. 2620). The interest of the vendee, however, may not be levied upon or sold on execution, even where he is in possession of the property (Civ. Prac. Act, § 513; *Sage* v. *Cartwright,* 9 N. Y. 49; *Bates* v. *Lidgerwood Mfg. Co.,* 50 Hun 420, affd. 130 N. Y. 200; 5 Carmody on New York Practice, § 1635, p. 3790). His creditors must resort to an action under section 1192 of the Civil Practice Act, to reach and sell his " interest in the contract " (*Higgins* v. *McConnell,* 130 N. Y. 482; *Hopkins* v. *Tinklepaugh,* 139 Misc. 127, affd. 234 App. Div. 728).

Finally, the vendor may maintain an action for waste against the vendee in possession, if such waste causes an impairment of the vendor's security (see *Van Wyck* v. *Alliger,* 6 Barb. 507). In *Shaw* v. *Foster* (L. R., 5 H. L. 321) the court said at page 338: " [T]he vendor, whom I have called the trustee, was not a mere dormant trustee, he was a trustee having a personal and substantial interest in the property, a right to protect that interest, and an active right to assert that interest if anything should be done in derogation of it." Similarly in volume 4 of Williston on Contracts, at page 2622, the author says: " It should be equally clear that the vendor has likewise an interest in the property, and, if the purchaser is in possession, he also may be enjoined from committing waste."

It is thus apparent that the interest of the vendor under a contract is not merely a chose in action for the purchase money. Until there is an actual conveyance of title, either voluntarily

or under the compulsion of a decree in equity, he retains in the property a substantial interest which the law of this State defines and to whose courts resort may be had for protection (see *State Tax Comm. of Utah* v. *Aldrich,* 316 U. S. 174, 180). He retains the record ownership and all of the above-described powers of a property owner.

Apart from the rules of law which evidence the proprietary nature of the vendor's interest, indication that the doctrine of equitable conversion does not in fact change the vendor's interest into personal property is found in several legislative enactments, each of which either seriously limits the applicability of that doctrine as such or recognizes the direct interest of the vendor in the property itself. The combined effect of those enactments in fields in which the doctrine had previously had its most important application has been drastically to curtail its importance as a principle of law from which deductions may be drawn.

One act which has delimited the area of its applicability is that abolishing the distinction between the heirs at law and next of kin (L. 1929, ch. 229, as amd. by L. 1930, ch. 174). At common law, although the title to property descended to the vendor's heirs, subject to the contract, the right to the purchase money when paid belonged and passed to the vendor's next of kin, on the theory that his beneficial right to the proceeds constituted separate personal property (*Williams* v. *Haddock,* 145 N. Y. 144, *supra; New York Central & H. R. R. R. Co.* v. *Cottle,* 102 Misc. 30, affd. 187 App. Div. 131, affd. 229 N. Y. 514; *Burkhardt* v. *Babcock,* 42 Hun 651, opinion *sub nom. Burank* v. *Babcock* in 3 N. Y. St. Rep. 458, *supra*). With the abolition of that dual system of inheritance, there is no longer any need for separate treatment of the property and the proceeds of its sale, so far as intestate succession is concerned.

Similar results obtain in the field of testate succession, leading to similar conclusions as to the nature of the vendor's interest. Where a will is executed devising specific land which is thereafter contracted to be sold, section 37 of the Decedent Estate Law provides that such contract shall not revoke the devise or cause it to adeem. An application of the doctrine of conversion would result in an ademption on the theory that the subject matter of the devise having been equitably converted, it no longer exists in the hands of the testator at his death as the same property which is directed to pass under the terms of the will. Under the statute, however, the land itself descends to the devisee, who retains it or its proceeds if the contract is

enforced (*Van Tassel* v. *Burger,* 119 App. Div. 509; *Matter of Prentice,* 134 Misc. 343).

Equally relevant is the rule that a will which purports to devise property *already* under contract to be sold when the will was executed passes to the devisee the full beneficial ownership of the property, including the right to the proceeds, and not merely the bare legal title (*Matter of Ashback,* 103 Misc. 147, 153; see, also, *McCarty* v. *Myers,* 5 Hun 83; *Heirs of Wright* v. *Minshall,* 72 Ill. 584; *Covey* v. *Dinsmoor,* 226 Ill. 438; *Beemer* v. *Beemer,* 252 Ill. 452, and 18 C. J. S., Conversion, § 9, p. 50). In the *Wright* case, the court said (p. 585) : " At the time the will was made, the testator held the legal title to the land, and was, to all intents and purposes, the legal owner of it, and had full power to devise it. Suppose the party who agreed to purchase it, had failed to perform his contract, or the contract had been rescinded, it would not be pretended that the land would have gone to the heirs-at-law.   *   *   *   [T]he legal title was devised to appellee,   *   *   *   she is rightfully entitled to the proceeds of this legal title when sold and conveyed ".

The effect of these two rules, one of case law and one declared by statute, is to prevent the rigorous application of the equitable conversion doctrine in interpreting the words " real property " when contained in a will, which doctrine would, in both cases, bring about contrary results.

Further legislative recognition of the interest of the vendor in the property itself is found in what is now section 170 of the Insurance Law, which provides that: " The making of a contract to sell or to exchange real property shall not constitute a change in interest, title or possession, within the meaning of the applicable provisions of any contract of fire insurance ". Under that statute, a vendor of insured property is the absolute and legal owner thereof so far as the insurer is concerned, and his insurable interest is the full value of the property (*Rosenbloom* v. *Maryland Ins. Co.,* 258 App. Div. 14). Nor does the vendor hold all or any part of the insurance proceeds in trust for the purchaser. As owner of the property, the vendor is entitled to such proceeds regardless of who bears the risk of loss (*Brownell* v. *Board of Educ.,* 239 N. Y. 369; see, also, 1936 Report of N. Y. Law Revision Commission, p. 759).

Respondent insists that section 202 of the Surrogate's Court Act dictates a contrary result and requires the vendor's interest to be regarded as personal property. However, the purpose of that statute is not to characterize the proceeds of a sale of land

as real or personal property or direct the manner of their distribution. It was designed simply to allow the estate representative to take possession of the proceeds for administrative purposes, whereas possession of the land itself would be received directly by the heirs or devisees. In *McCarty* v. *Myers* (5 Hun 83, *supra*), it was said at page 85, that the executor will " hold the money for the creditors of their testator, *or for the devisee,* as the other personal estate of the testator shall or shall not prove sufficient to pay the testator's debts.  *  *  *  If the purchaser shall fail to perform the contract on his part, and it is forfeited, the devisee will take the title discharged from the *equitable rights* of the purchaser, and become the absolute owner in fee " (emphasis added). (See, also, *Matter of Ashback,* 103 Misc. 147, *supra.*)

The practical effect of the statutes referred to above and of the series of common-law rules defining the rights of a vendor is to leave in him a well-defined and substantial interest in the property itself, subject only to specific contract obligations to deal with the property in a prescribed manner and to convey it upon a proper tender of performance by the vendee. That interest must be characterized as proprietary. Upon the death of the vendor his estate, in the language of section 249-p of the Tax Law, " consists " of such real property until actual conveyance is made or compelled pursuant to the contract (*Wright* v. *Minshall,* 72 Ill. 584, *supra; McCarty* v. *Myers,* 5 Hun 83, *supra*). The practical application of the doctrine of conversion does not cause a severance of the vendor's interest therein or create in him a mere chose in action for the purchase money.

This examination into the nature of an executory contract of sale in order to determine the rights of the vendor which are retained thereafter or flow therefrom was necessitated by the conflict between *Matter of Baker* (67 Misc. 360) and *Matter of Wolcott* (94 Misc. 73) on the one hand and *Matter of Boshart* (107 Misc. 697, affd. 188 App. Div. 788) and *Matter of Russell* (119 Misc. 12) on the other. The conflict between these decisions has been repeatedly pointed out (Guterman, Revitalization of Multiple State Death Taxation, 42 Col. L. Rev. 1249, 1256; Note, 78 A. L. R. 793, 799). In the latter two cases, on similar states of facts, the courts applied the doctrine of equitable conversion and held the estate nontaxable in New York. In the former two cases, the estates of *New York* residents were held not taxable as to *foreign* realty which the decedents had contracted to sell, on the ground that the interest of such vendors is one in realty having a tax situs without the State, the doctrine of equitable

conversion being held to have no application in the field of taxation.

The pre-eminent case in this jurisdiction on the question of the applicability of the general theory of conversion in the field of taxation is *Matter of Swift* (137 N. Y. 77). Although that case involved a " conversion " by direction of a testator contained in his will, the court said at page 86: " Nor is the argument available that, by the power of sale conferred upon the executors, there was an equitable conversion worked of the lands in New Jersey, as of the time of the testator's death, and, hence, that the property sought to be reached by the tax, in the eye of the law, existed as cash in this state in the executor's hands, at the moment of the testator's death. * * * Neither the doctrine of equitable conversion of lands, nor any fiction of *situs* of movables can have any bearing upon the question under advisement. *The question of the jurisdiction of the state to tax is one of fact and cannot turn upon theories or fictions; which, as it has been observed, have no place in a well adjusted system of taxation.*" (Emphasis added.)

The respondent herein contends that the factual difference between that case and this is sufficient to distinguish the two. He urges, in effect, that in the case of conversion by will there passes from the decedent at the moment of his death a complete fee, subject only on receipt by the executors to the equitable obligation to sell, whereas in the case of conversion by contract, as the testator converted his property prior to death, the interest which passes to his executors is no longer realty. The fact remains however, as pointed out above, that in spite of the doctrine of equitable conversion the vendor retains a substantial interest in the property, which passes to his estate or devisees. That a clear difference exists between conversion by will and by contract cannot admit of doubt. The significance of the *Swift* case (*supra*) for this proceeding rests solely in its conclusion that what amounts at best to a fiction of law cannot be employed to change the incidence of the tax statute (see, also, *Matter of Paul,* 303 Pa. 330, certiorari denied 284 U. S. 630; *Matter of Sutton,* 3 App. Div. 208, affd. 149 N. Y. 618; *Matter of Livingston,* 1 App. Div. 568; *Matter of Offerman,* 25 App. Div. 94; *Matter of Berry,* 23 Misc. 230, and *Matter of Bartow,* 30 Misc. 27).

Finally, in *Matter of Baker* (67 Misc. 360, *supra*), it was said (pp. 361–362) : " The doctrine of equitable conversion, in its application to a decedent's estate, concerns only those who have come into relations of contract or privity with the decedent or his estate. The fiction of conversion adjusts rights and imposes

equities, but it cannot change facts or work inequity. In adopting it, the law makes believe that the things which have been arranged to be done have been done, but this amiable pretense must be confined by the impulses which inspire it to the persons in privity with the transaction. There is no equitable need for its extension to others. Strangers have nothing to do with the reason for its being and nothing to do with its operation. In the best defined case of equitable conversion, the legal owner of the lands retains as to persons not in equitable relations to himself all the rights and duties which belong to his seizin." That statement has been reiterated in other cases (*Hooper* v. *Peters Mineral Land Co.,* 210 Ala. 346; *Eagan* v. *Mahoney,* 24 Col. App. 285; *Connell* v. *Crosby,* 210 Ill. 380; *Matter of Wilson,* 218 Iowa 368; *McCurdy* v. *McCurdy,* 197 Mass. 248; *Wilder* v. *Ranney,* 95 N. Y. 7; *Sherrill* v. *Christ Church,* 121 N. Y. 701; *Latta* v. *Jenkins,* 200 N. C. 255; 4 Pomeroy on Equity Jurisprudence [5th ed.], § 1166, p. 492). As between the estate and the taxing authority, the ownership of the property was vested in the decedent at the moment of his death. To the extent of the parcel in question, the estate at the time of decedent's death, consisted of real property situated in this State and is subject to tax under section 249-p of the Tax Law.

For the above reasons the court holds that the appeal must be sustained. The case is remitted to the appraiser for determination of the proper tax.

Submit, on notice, order accordingly.